EATON, LOVETT & WELLINGTON v. THEODORE COOK.

*Stoppage in transitu.*

When goods are purchased and paid for by the order, note, or accepted bill of a third party, without the indorsement or guaranty of the purchaser, the vendor has no right of stoppage *in transitu.*

When goods are sold to one person, who, before delivery to him, resells them to another, and this is known to the original vendor, who consigns them to the second purchaser, the original vendor will have no right of stoppage *in transitu.*

TROVER for a lot of hardware goods. Plea the general issue and trial by jury, at the June term, 1858, BARRETT, J., presiding. On trial the following facts appeared:

Barnes & Brothers were manufacturers of shoe thread, &c. in Corinth, Vt. They had been accustomed for a considerable time to sell their manufactures to the plaintiffs, who were hardware dealers in Boston, sometimes receiving payment in cash, and sometimes by drawing orders payable in hardware on the plaintiffs in favor of country merchants with whom Barnes & Brothers were dealing. Barnes & Brothers, being indebted to the defendant, December 7th, 1857, drew the following order upon the plaintiffs:

MESSRS. EATON, LOVETT & WELLINGTON,

Please let Mr. Theo. Cook have what goods he may want, and we will pay you in thread and cord.

BARNES & BROTHERS.

Corinth, Dec. 7th, 1857.

The defendant presented this order on the 8th of December, 1857, to the plaintiffs, who accepted it and made up for the defendant the bill of goods sued for, giving to him a bill of the goods as bought by him, and receipted as being paid by the order of Barnes & Brothers, and thereupon the defendant indorsed on the order the receipt of that amount of goods, the plaintiffs charging the goods to Barnes & Brothers. The defendant returned home, and the plaintiffs, pursuant to his directions, did up the goods in packages, directed to *Theodore Cook*, Bradford Depot, Vt., and delivered them at the railroad depot in Boston, to be forwarded for and at the charge of the defendant, to Bradford depot, that being the station nearest the place of business of said Cook.

The goods were forwarded by railroad from Boston on their way to Bradford. Before they arrived at Bradford the plaintiffs learned that Barnes & Brothers had failed and become insolvent after the sale of these goods, and they immediately telegraphed to one Classon, depot master at Thetford, to stop and take possession of the goods, when they should arrive at that place *en route* for Bradford, as the agent and in behalf of the plaintiffs. Classon, when the goods arrived, announced to the conductor of the train having charge of the goods, the instructions he had received, and then claimed to take possession of the goods for the plaintiffs, and required that they should be taken off and left at Thetford. The conductor refused to deliver the goods till they had arrived at their destination; whereupon Classon got into the car in which the goods were and went with them to Bradford depot, where they were unloaded. He then told Andrus, the depot master at Bradford, of his agency and business for the plaintiffs, and put the goods into his hands to be held by him for, on account of, and subject to the order of the plaintiffs. Andrus received and held the goods accordingly. The day after the goods thus arrived at Bradford, Wellington, one of the plaintiffs, and also the defendant, went to Bradford depot. Wellington claimed and demanded the goods of Andrus, and offered to pay the freight on them. The defendant also claimed and demanded the goods of Andrus, and offered him a bond of indemnity, which he received, and thereupon delivered them to the defendant. Wellington insisted on the plaintiffs' claim and right to the goods, and forbid Andrus to deliver them to the defendant. Upon these facts the court directed a verdict for the defendant, to which the plaintiffs excepted.

*Ormsbee & Farnham*, for the plaintiffs, cited *Dixon* v. *Yates*, 5 Barn. & Ald. 313; *Small* v. *Moote*, 9 Bing. 574; 1 Smith's Lead. Cases, 433; Redfield on Railways, 303, sec. 2; 3 East. 396; 7 D. & E. 442; 7 Mass. 757; 12 Pick. 308; *Coats* v. *Railton*, 6 B. & C. 422.

*P. T. Washburn* and *A. M. Dickey*, for the defendant, cited 1 Parsons Cont. 476; 2 Kent 245; *Sawyer* v. *Joslyn*, 20 Vt. 172; *Stubbs* v. *Lund*, 7 Mass. 457; *Rowley* v. *Bigelow*, 12 Pick. 314;

Smith's Mer. Law 653 ; *Stoveld* v. *Hughes*, 14 East 308 ; *Hawes* v. *Watson*, 2 B. & C. 540.

REDFIELD, CH. J.   I. The parties treated the transaction, in this case, as a sale directly from the plaintiffs to the defendant. The goods were so billed.   If that is the proper view of the case, there was no credit, and of course no right to stop *in transitu.* For that right is made dependent upon the sale being upon credit. So far as the defendant is concerned, the case is the same as if the goods had been bought upon the sale of the note, or accepted bill of Barnes & Brothers, without any indorsement or guaranty by the defendant, or an indorsement without recourse.   In that view there could be no pretence of any right to stop the goods *in transitu.*

II. And as a sale to Barnes & Brothers, and a resale by them, there seems to arise a difficulty in presuming any right of stoppage *in transitu.*   For if the vendor consent to a resale or know the purchase is for that purpose, he is bound by the commencement of the new destination as a final and irrevocable delivery.   The same as when the goods are sent abroad, upon an adventure. *Stubbs* v. *Lund*, 7 Mass. 453, and cases cited.   *Stoveld* v. *Hughes*, 14 East. 308, was a case where the goods were resold and marked by the second vendee, by the consent of the vendor, which is n ot stronger than the present case, viewed as a resale.   For here the goods were purchased for the express purpose of resale to the defendant, and were delivered to the carrier not to be carried to Barnes & Brothers, or with any provision for any transit to them.   This delivery then was final, and accomplished all the possession ever contemplated by Barnes & Brothers.

III. And if we attempt to make it a sale to Barnes & Brothers, and to find a journey or transit, there was in fact nothing of the kind contemplated, so far as the vendees were concerned.   And the cases all require that fact to exist, in order to create the right to stop *in transitu.*   Upon the delivery to the carrier it had effectually come to the possession of Barnes & Brothers as much as it ever was contemplated that it would come.   This is expressly recognized in numerous cases.   *Rowley* v. *Bigelow*, 12 Pick. 214 ; *Noble* v. *Adams*, 7 Taunton 59.

Eaton et al. *v.* Cook.

There is no doubt if the vendee make a resale of the goods, he makes it subject to the vendor's right to stop the goods *in transitu.* But this is while the goods are going to the first vendee. After the first vendee has resold them and put them on their second passage, the transit, between the vendor and his vendee is at an end. But a resale will not defeat the vendor's right to stop the goods *in transitu,* until they have reached their first destination, unless the bill of lading is assigned, or the vendee has anticipated the arrival, and taken possession, which he may do, or the vendor consents to the resale, which is this case from the beginning. So that this case never involved the right to stop *in transitu* towards Barnes & Brothers, as no such transit ever existed, or was contemplated. All the transit there ever was in this case is one towards the second vendee, when the delivery by the vendor to the carrier was for that purpose. *Lickbarrow* v. *Mason,* 1 Smith's Lead. Cases, 433 and notes. The case of *Coats* v. *Railton,* 6 B. & C. 422, goes upon the ground that Butler, Knes & Co., of Lisbon, were the real purchasers although the purchase was in the name of Butler & Brothers of London, (the partners in both houses being the same except Knes,) although to be paid by a bill upon Butler & Brothers. That bill being dishonored, the vendees still remained liable for the price, and the right to stop *in transitu* still continued. Unless the case is explainable upon the ground that both houses were virtually the same, it is at variance with all the other cases upon this point. And BAYLEY, J., in this case says, that when the goods are bought to be sent to another, and this named to the vendor as their destination at the time of the purchase, the transitus is at an end whenever the goods are put upon this transit; citing *Leeds* v. *Wright,* 2 B. & P. 320, which would seem to be altogether at variance with the purpose for which he cites it, unless the two houses are treated as virtually one in interest, and the delivery at Lisbon as a delivery to the vendees themselves.

Judgment affirmed.