M. & L. R. R. R. CO. AS REORGANIZED, v, C. M. FREED.

1. STOPPAGE IN TRANSITU: . *Who has the right to.*

F., a merchant at Dardanelle, ordered goods of W. B. & Co., merchants at St. Louis. They sent the order to L. A. & Co., merchants at New Orleans, with directions to ship the goods to F. at Dardanelle, and send them the bill and bill of lading. L. A. & Co. filled the order, shipped the goods to F., and sent the bill and bill of lading to W. B. & Co., and charged the goods to them, and they charged them to F. During the transit W. B. & Co. failed, and L. A. & Co. claiming the right of stoppage *in transitu*, demanded the goods of the M. & L. R. R. R. Co., who were transporting them to F., and the company delivered them up to them. F. then sued the company for the value of the goods. Held: that L. A & Co. were not the vendors of F.; there was no privity between him and them, and they had no right to stop the goods, and the defendant was liable to F. for their value.

Memphis & L. R. R. R. Co. as Reorganized, v. Freed.

2. COMMERCIAL LAW: *Consignment of goods vests title in consignee.*
Upon the consignment of goods the title becomes vested in the consignee, absolutely and against all the world, subject only to the carrier's lien for freight, and the consignor's right of stoppage *in transitu* upon the consignee's insolvency.

APPEAL from *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.

### STATEMENT.

Freed, a merchant at Dardanelle, ordered of Walker Bros. & Co., merchants at St. Louis and Memphis, a bill of dry goods. Walker, Bros. & Co. transmitted the order to Lehman, Abrahams & Co., merchants at New Orleans, with directions to ship the goods to Freed, at Dardanelle, and send the invoice and bill of lading to them. Lehman, Abrahams & Co., filled the order and shipped the goods to Freed, by way of Hopefield; charged them to Walker, Bros. & Co., and sent the invoice and bill of lading to them, and they charged the goods to Freed.

At Hopefield the goods were delivered to the defendant company, to be transported on their road to Argenta, and thence, to be forwarded to Freed, at Dardanelle. While the goods were in transit from New Orleans, Walker, Bros. & Co. failed, and Lehman, Abrahams & Co. claiming the right of stoppage *in transitu*, demanded the goods from the defendant company, and they were delivered to them.

Freed then sued the company for the value of the goods, for not delivering them as contracted in their bill of lading.

Upon the trial, the defendant objected to the introduction of the following testimony of Freed: "That early in October, 1879, he sent an order to Walker, Bros. & Co., of St. Louis, Mo., to send him some sheeting and yarn, which were the same mentioned in the complaint, and the

same were charged to him by Walker, Bros. & Co.  That the following was a copy of a letter sent by Lehman, Abrahams & Co., of New Orleans, to Walker Bros. & Co., to-wit:

NEW ORLEANS, LA., October 28, 1879.

*Messrs. Walker Bros. & Co., St. Louis:*

SIRS:—We enclose bill of lading and invoice of goods shipped to C. M. Freed, as per your instructions, amounting to $507 44, for which please credit our account.  We shipped the goods *via* Hopefield.

Yours truly,

LEHMAN, ABRAHAMS & CO.

The objection to this testimony was overruled, and after other testimony, showing the facts above stated, there was a verdict for the plaintiff, and from final judgment the defendant appealed.

*Cohn & Cohn*, for appellant.

*First.*  The testimony of Freed was irrelevant and immaterial, and comes within the rule *res inter alios acta*, etc. Freed, so far as the rights of L. A. & Co. could be affected, occupied the position of a representative, receiver or agent of W. Bros. & Co., and was not bound as a purchaser to L. A. & Co.  *Benj. on Sales*, 1st *Eng. Ed. p.* 352; *Hardman* v. *Booth*, 1 *H. & C.*, 803; 32 *L. J. Ex.*, 105.  No sale is binding unless the buyer not only accepts, but receives the goods.  *Benj. on Sales, passim.*  Freed had not paid for the goods, and can in no way be prejudiced by the exercise of the right of stoppage.  See generally authorities cited *supra*, and *Smith's L. C. (H. & W. Am. notes)*, p. 892, *vol.* 1, and p. 1195, 7th *Am. Ed.*; also p. 1219 *Ibid*.

*Second.*  The case in 12 *Pick*, 307, is not applicable, for there was a complete delivery in contemplation of all par-

ties. But it shows that the right of stoppage is a *quasi* lien, and such a lien L. A. & Co. had, as vendors. *Benj. on Sales*, *1st Eng. Ed.*, *p.* 695; *Oppenheim* v. *Russell*, *B. & P.*, 42.

Freed, though named as such, was not the consignee of L. A. & Co., but W. Bros. & Co. were. He could sue on the bill lading. *Sec.* 589, *Story on Bailm.*, *8th Ed.*; *G W. R. R.* v. *McComas*, 33 *Ills.*, 185; so could the consignor, *Hooper* v. *Chicago*, etc., 27 *Wis.*, 81; *Blanchard* v. *Page*, 8 *Gray* (*Mass.*) 281; *So. Ex. Co.* v. *Craft*, 49, *Miss.*, 480; 44 *Ala.*, 101; 49 *N. Y.*, 188; 19 *N. H.*, 337; *Story on Bailm.*, *8th Ed.*, *sec.* 589, and so could any person in interest. *Wells on Res. Adjudicata*, *secs.* 67, 64, 74 and 16, *and Code*. Hence, because a person is entitled to sue, and is consignee, is not the criterion whether the vendor may exercise the right. This shows that *it is not essential, in all cases, that the person named as consignee in the bill of lading* must be insolvent. The insolvency of the *vendee* is the criterion, and not of some sub-vendee, or consignee. *In Re Golding, Davis & Co.* v. *Knight & Son*, 42 *L. T. Rep. N. S.*, 270; *Houston on Stoppage*, etc., *chap. I*; *Benj. on Sales*, *chap. V.*; *Smith L. C.*, *p.* 217, *7th Ed.*

Freed was not a *bona fide* purchaser for a valuable consideration; he was not a purchaser at all; he paid no value; he received no bill of lading. W. Bros. & Co. were the purchasers, and on their insolvency the right attached.

9 *Heisk* (*Tenn.*) 388 and *Eaton* v. *Cook*, 23 *Vt.*, 60, are not applicable. In the former there had been complete delivery, etc., and in the latter there was no sale on credit.

*Third.* Vendée sells subject to vendor's right of stoppage. *Dixon* v. *Yates*, 5 *B. & A.*, 313; *Jenkins* v. *Usborne*, 8 *Scott*, *N. R.*, 505; 7 *M. & G.*, 678.

*B. C. Brown*, also for appellant.

1. Freed is in no way damaged—avers no special damages. He has not paid for the goods, nor is he liable to W. Bros. & Co. `until he does receive them. There is no *privity* between him and L. A. & Co. They made no contract with him, had sold him nothing, and were under no obligation to deliver goods to him ; consequently there was no privity between Freed and the defendant carrier. Privity arises from mutuality of obligation. The carrier was the agent of L. A. & Co., and they had the right to countermand and revoke their orders to their agent.

The order from Freed to W. Bros. & Co. is *res inter alios acta*. The right of stoppage exists so long as the transitus exists, and the transitus is not at an end until the goods have reached the place named by the buyer, to the seller, as the place of destination. *Benj. on Sales, 1st Ed.*, 643. The vendor has the right to re-take the goods before they are actually delivered to the vendee, or some one whom he means *to be his agent, to take possession of, and keep the goods for him*. *Ib.*, 635.

2. The true and only criterion of the right, is the insolvency of the purchaser. It is based : 1st. Sale on credit ; 2d. Insolvency of the *purchaser ;* and, 3d. That the goods have not reached the purchaser or his agent, or the place of destination ; but are still in the possession of the carrier *qua* carrier. *Ib.,* 627 ; *Hutchison on Carriers,* §409 ; *Reynolds* v. *Boston, etc., R. R.*, 43 *N. H.*, 580. All these circumstances are found here. The fact that the purchaser named Freed to receive the goods cannot alter the principle on which stoppage is based, that "one man's goods shall not be appropriated to payment of another man's debts." Cites *Ex parte Golding, supra*, and *Mohr* v. *B. & A. R. R.*, 106 *Mass.*, 107.

*J. M. Moore*, for appellee.

The right can only be exercised between vendor and. vendee, and during the transit from vendor to vendee. L. A. & Co. were the vendors, and W. Bros. & Co. their vendees, and the goods were delivered to the carrier for shipment to a different destination; it was not contemplated that they should ever reach the 'possession of W. Bros. & Co. The bill of lading was in name of appellee. Every circumstance concurred to defeat the right. See *Eaton* v. *Cook*, 32 *Vt.*, 58; *Rowley* v. *Bigelow*, 12 *Pick.*, 313; *Stubbs* v. *Lund*, 7 *Mass.*, 453; *Noble* v. *Adams*, 7 *Taunton*, 59. Delivery of goods to carrier is a constructive delivery to the consignee, and sufficient to pass title. *Crumbacker* v. *Tucker & Hamilton*, 9 *Ark.*, 370; *Magruder & Bro.* v. *Gage*, 33 *Md.*, 334.

When the relation of vendor and vendee exists, the delivery is subject to the right of stoppage in transitu in the vendor *qua* vendor. *Benjamin on Sales*, sec. 832; 1.. *Smith, L. C.*, 5th *Am. Ed.*, 874-5, 908.

Appellee was neither the vendee nor sub-vendee of L.. A. & Co., and hence no right existed in them.

EAKIN, J. There was no error in admitting the testimony of plaintiff, Freed, to show that he had ordered the goods. from Walker Bros. & Co. The right of stoppage in transitu does not arise from any contract between the parties. It is a commercial right, arising from the circumstances; and it. is competent to show the facts. The fact intended to be shown, by this testimony, was, that the plaintiff, Freed, to whom the goods were shipped, was the real owner, by purchase from Walker Bros. & Co., and that the goods were not shipped to him, as the agent of Walker Bros. & Co., who order-- ed them from the New Orleans firm, and directed them to be

sent to Freed at Dardanelle; but that the goods, if they had come to his possession, would have been received by him, not as the goods of Walker Bros. & Co., but as his own. In other words, it tended to show that the relation of vendor and vendee did not exist between him and the consignors, but between him and the firm of Walker Bros. & Co.; and that there was never any consignment, or *transitus* of the goods to the original purchasers, either in their own names, or to them in his name, as agent. If he had really been the agent of Walker Bros. & Co., or under any obligations to receive the goods for them, the right of Lehman, Abrahams & Co., the consignors, to stop them *in transitu* could not be doubted; but, as he had never had any transactions with Lehman, Abrahams & Co., and had never represented himself to them as the agent of the purchasers; and as he had made himself responsible to Walker Bros. & Co., and would have received the goods absolutely as his own property, in his own right, if they had not been intercepted, then it becomes a grave question whether or not the right of stoppage *in transitu* ever existed at all; or, if it existed, whether it should not be considered as existing in Walker Bros. & Co., the real vendors to Freed, upon *his* insolvency, if it had occurred. It was proper to bring before the court all the facts showing the actual status or condition of things, that it might determine the rights of the parties, within the scope to which the doctrine of stoppage *in transitu* extends. To such cases the prohibition against showing *res inter alios acta* does not always apply.

The true state of the case, as developed by the record, is simply this: Lehman, Abrahams & Co., upon the request of Walker Bros. & Co., and taking them as paymasters, shipped goods to Freed, at a point distant from the business place of either. It was never contemplated, from anything

that appears, that the goods were intended to reach Walker Bros. & Co., or their agents, or to come into their possession. The fact is, they were not; and there is nothing from which the shippers might fairly have presumed an intention on the part of Walker Bros. & Co. to take control of them at their destination, or retain any property in them. Freed remains solvent. Walker Bros. & Co. became insolvent, and the goods were redelivered, by the carrier, to Lehman, Abrahams & Co., before they came to Freed's possession.

Is the carrier responsible to Freed for that? The goods became his property, on consignment, absolutely and against all the world, subject only to the carrier's lien for freights; which, under the circumstances, it would have been idle to tender; and any right of stoppage *in transitu* which might exist. Had Lehman, Abrahams & Co., that right? If not, the action of the court is correct. If they had, it must be reversed.

In the present condition of commerce, it is not uncommon, as in this case, for purchasers to direct their vendors to consign the articles to customers of the former, with whom the shippers have no privity whatever.

The distinction between vendor and consignor and vendee and consignee, sometimes lost sight of in the old cases, has thus become a matter of vast importance, in these triangular transactions; and, there being only one transit, it is a weighty matter to determine who, during that transit, has the right of stoppage, and upon whose insolvency; whether, in this case, it would have been in Walker Bros. & Co., or in Lehman, Abrahams & Co., on the insolvency of the consignee, Freed, if in either. It could not have been in both; for that would produce an unseemly conflict. If in Lehman, Abrahams & Co., the contingency has not arisen; for Freed is not insolvent. If in Walker Bros. & Co., upon what principle can it, on *their* insolvency, arise in.

favor of the New Orleans consignors, against the solvent vendee of Walker Bros. & Co? If in neither, in case of Freed's insolvency, but only in Lehman, Abrahams & Co., in the contingency of the insolvency of Walker Bros. & Co., then we have the case presented of a solvent consignee, ready and willing to pay for his goods, subject to have them taken upon the default of a party for whom he. is not liable, and whose actions he cannot control. If more attention had been paid in the discussions, to the distinction between consignee and vendee, and consignor and vendor, the decisions would have cast, on this point, more light than we now have.

A review of the authorities shows that the right has never been applied in cases where the consignor claiming it has not been the vendor, and the consignee (upon whose insolvency it arises) the purchaser and debtor. Lord Chancellor BARON EYRE remarked, in *Kinloch et al.* v. *Craig*, in 1790, (3 *Term Rep.*, *p.* 787), that the right never occurred, but as between vendor and vendee.

It will simplify the matter to bear in mind when the terms "consignor" and "consignee" are used, that by the former is meant a vendor who ships, and by the latter, a purchaser to whom they have been sent. It is the real interest on one side and liability on the other, which gives the right; not the technical designation of the parties in the bill of lading. (See notes to case of *Lickbarron* v. *Mason*, *Smith's Leading Cases*, *Vol.* 1, *p.* 901).

It is equally clear, from all the cases, that the right has never been exercised, save upon the transit of the goods from a vendor to the purchaser from him.

Freed bought the goods from Walker Bros. & Co. They were his vendors and to them only was he liable. There can be no doubt that if the goods had taken their natural course, and been shipped by the original owners to Walker

Bros. & Co., their vendees, the right of stoppage would have attached against the latter, upon their insolvency; and the goods might have been reclaimed during that transit. But if they had reached Walker Bros. & Co., and been by them reshipped to Freed, at Dardanelle, it is equally clear that the original vendors would, on that transit, have had no right of stoppage, in any event; but it would have been in Walker Bros. & Co., upon the contingency of Freed's insolvency. Quite as clearly, Freed never contemplated, nor can be presumed to have assented to any other or different right of stoppage of the goods, than in case of *his* *own* insolvency, on the transit from his vendors to himself.

Neither transit was used. By agreement between Walker Bros. & Co. and the original vendors, another was adopted, which contemplated that the goods should come to the possession of the vendee of Walker Bros. & Co., without ever reaching Walker Bros. & Co., at all. This was before any shipment, and before Lehman, Abrahams & Co. had parted with possession. It is not like a sale by a purchaser of goods on their transit to himself; because, when the vendor contemplates a transit to his purchaser, and ships accordingly, he cannot be defeated of his right by the conduct of the purchaser during the transit, without his assent, either express, or implied, in case of the assignment of the bill of lading. Here he assents to a different destination before parting with his property; and if he thereby loses his right of stoppage, it is his voluntary act.

A case very nearly in point, as to the rights of parties in this case, is that of *Feise et al.* v. *Wray*, 3 *East.*, 93. Browne, a London trader, ordered of Fritzing, a Hamburg merchant, a quantity of beeswax. Not having 't, Fritzing procured the wax from another merchant, a stranger to Browne, (having, with him, no privity of contract), and shipped it to Browne, upon the latter's account and risk,

drawing bills upon him for the purchase money. Upon the insolvency of Browne, Fritzing, by his agent, stopped the goods in *transitu*. The assignees in bankruptcy of Browne,. brought trover.

In his opinion, Mr. J. GROSE remarked, after stating the prominent facts : " There was *no privity* between Browne and the merchant of whom the wax was purchased." " What is this, then, but the plain and ●ommon case of the consignor of goods, who has not received payment for them, stopping them *in transitu*, before they get to the hands of the consignee? It is said that no such right exists in the case of a factor against his principal. If this were a case of factor and principal, merely, I should find great difficulty in saying that it did. But here, Fritzing may in reality be considered as the vendor ; for the name of the original owner was never made known to the bankrupt, but the goods were purchased and the bills drawn in Fritzing's own name ; and therefore he stands in the relation of vendor as. to Browne."

LAWRENCE, J., alluded to the argument that the right of stoppage applied solely to the case of vendor and vendee ; from which it was contended that Browne must be considered as the principal for whom the goods were originally bought, and that Fritzing was only the factor, or agent ; the Hamburg merchant, furnishing the beeswax, being, in fact, the vendor of the bankrupt ; and that there was no right of stoppage in Fritzing. He says : " If that were so, it would nearly put an end to the application of that law in this country ; for I believe it happens, for the most part, that orders come to merchants here from their correspondents abroad, to purchase and ship certain merchandise to them. The merchants here, upon the authority of those orders, obtain the goods from those whom they deal with ; and they charge a commission to their correspondents

abroad, upon the price of the commodity thus obtained. It never was doubted, but that the merchant here, if he heard of the failure of his correspondent abroad, might stop the goods *in transitu*. But, *at any rate*, this *is* a case between vendor and vendee; for there was *no privity* between the original owner of the wax and the bankrupt; but the property may be considered as having been first purchased by Fritzing, and again sold to Browne, at the first price, with the addition of his commission upon it. He then became the vendor, as to Browne, and consequently had a right to stop the goods *in transitu*.' "

LE BLANC, J., puts the case in this wise: " The situation of Fritzing was that of being employed by Browne to purchase the goods abroad, and to send them to him here. For the purpose, then, of stopping the goods *in transitu*, they stood in the relative situation of vendor and vendee; though, perhaps, not so as for all purposes. Fritzing *pledged his own credit* in the purchase of the goods from the original owners; and Browne could not be called upon for the value by the original owners, unless the goods came to his hands and he had not paid or accounted for the value of them to Fritzing, with whom he dealt. Then, clearly, Fritzing had a right to stop them *in transitu*." And so all the Justices agreed.

I have cited the different expressions of the justices in that case, in order to show the true grounds of their conclusion, and that the differences in the facts between that case and this, would not have been considered material. There the original vendor was not advised of the name of the ultimate purchaser, for whom the goods were intended, but that is mentioned only as conclusive proof of want of privity of contract, and it was upon this *want of privity* between the original vendor and ultimate purchaser, that the right of stoppage *in transitu* was to be in Fritzing, the immediate

70—38

vendor of Browne. In the case in judgment, the want of privity between Lehman, Abrahams & Co. and Freed, is even more marked than if they had not known Freed's name.

The goods were sold on the order and sole credit of Walker Bros. & Co.; the bills made out in their name and at their request, sent to them with the bills of lading.

The vendors need not have inquired nor known anything of Freed. He was nothing to them, nor they to him. The goods were put in a carrier's hands directed to him, simply as a mode of disposition of them, directed by the purchasers.

In the American notes to Smith's leading cases (*ubi supra*) it is said. "It is not necessary, however, in order to support the right of stoppage *in transitu*, that the consignor should be the original owner of the goods, or have purchased them on his own account. Although acting as an agent for a commission, and with the view of paying for them ultimately, with funds derived from the consignee, still, *if he have obtained them on his own risk and credit*, he will be entitled to stop them *in transitu*, on the insolvency of the latter," citing American cases, and also *Jenkyns v. Usborne*, 7 *Man. & G.*, 678.

In view of these principles, I think it plain that if Freed had, himself, become bankrupt upon the transit of the goods from New Orleans to Dardanelle, there would have been no right of stoppage in Lehman, Abrahams & Co., and as there would be in Walker Bros. & Co., notwithstanding the goods had been shipped from New Orleans, they being the true owners and vendors as regards Freed, we may safely take this standpoint, and consider, from it, whether or not the former firm, by agreeing to consign upon a transit, burdened with a right of stoppage in behalf of Walker Bros. & Co. upon *one* contingency, can claim for

themselves, a right of stoppage in another; to-wit: the insolvency of Walker Bros. & Co. I have never heard of any case which held that the same goods, or the same transit might be subjected to two conflicting rights of stoppage upon different contingencies.

I think it would result that no right of stoppage as to these goods, remained in Lehman, Abrahams & Co. in any event.

Although the contingency upon which they claim that their right arises, is the insolvency of Walker Bros. & Co., it is not immediately against them, or to prevent the goods reaching them, that its exercise is attempted. It is to prevent the goods from reaching Freed, who does not stand in the position of a purchaser, during transit, but of one who has been accepted by Lehman, Abrahams & Co. before shipment, as the person entitled to receive them, as owner, and not as their vendee. There is nothing in the record to bring this case within the class where the purchaser designates a place of delivery different from his own place of business, for if to be delivered for him, or to his use, at any named place, the right of stoppage remains until he receives them.

Even upon the supposition that Freed has not paid Walker Bros. & Co. for the goods, and might defend a suit against him by pleading this stoppage—a point not necessary to decide—this would then resolve itself into an effort on the part of Lehman, Abrahams & Co. to secure a preference over other creditors of Walker Bros. & Co. by diverting to themselves, the value in goods, of so much of the assets of the latter firm as consists of Freed's debt. If they had such right to save themselves upon a plank of the shipwreck, there was certainly a counter right on the part of Freed to receive his goods and pay for them to whoever might be entitled. He is solvent, and may, in the absence

of proof to the contrary, be considered willing to pay for the goods in full. I think it would be difficult, amongst all the cases, to find one where the right of stoppage *in transitu* has been used to defeat the owner and consignee of goods of their possession, without any default of his own. It cannot be presumed to be a matter of indifference to Freed, whether he shall take his goods and pay for them, or lose them and be excused, and the carrier had no right to decide this for him, and restore the goods to Lehman, Abrahams & Co.

A leading case in America upon this point, is that of *Stubbs* v. *Lund*, 7 *Mass.*, 453. Chief Justice PARSONS upon the facts in that case, which, however, are not analagous to these, remarked upon the general principle, that the true distinction governing the right of stoppage *in transitu*, is this: "Whether any actual possession of the consignee or his assigns, after the termination of the voyage, be or be not provided for in the bill of lading. When such actual possession after the termination of the voyage is so provided for, then the right of stoppage *in transitu* remains after the shipment. Thus, if goods are consigned on credit, and delivered on board a ship chartered by the consignee, to be imported by him, the right of stoppage *in transitu*, remains after the shipment. But if the goods are not to be imported by the consignee, but to be transported from the place of shipment to a foreign market, the right of stopping *in transitu* ceases on the shipment, the transit being then completed, because no other actual possession of the goods by the consignee is provided for in the bills of lading which expresses the terms of. the shipment."

These remarks are applicable to the case in judgment this far: That, here, the goods were not purchased by Walker Bros. & Co., to be imported by them to St. Louis or Memphis, where their business houses were, and

no possession by them was ever contemplated; but they were put upon a steamer, by their directions, and with the assent of the vendors, to be transferred from the place of shipment to Dardanelle, in Arkansas; which, as to commercial matters, "may be considered a foreign market." In further illustration, he says: "If a ship sail from this country to Great Britain, with the intention of taking on board goods for divers persons, or freight, to be transported to a foreign market, as the mercantile adventures of different shippers; if goods are so shipped by the several consignors, there is no transit to the consignees after shipment, and no right of stopping remains with the consignors. But it is otherwise when several persons import goods in a general ship, on their own credit and risk; for a future actual possession by them is provided for in the bills of lading."

The subsequent case of *Eaton et als.* v. *Cook*, 32 *Vt.*, 58, seems essentially in point. The plaintiffs, Eaton and others, hardware merchants of Boston, sold and shipped goods to Cooke, in Vermont, upon the order and credit of Barnes & Brothers, a firm with which they had dealings. They gave Cooke a receipt for the bill, as paid by the order of Barnes & Bros., and charged them up to the latter firm. During the transit Barnes & Bros. failed, and the firm of Eaton & Co. demanded the goods of a depot agent, before they reached their destination. He delivered them, however, to Cooke, upon being indemnified, and Eaton et als. brought trover. The judgment below was for Cooke, which, on appeal, was affirmed.

The court held, 1st, That if the matter were to be viewed as a sale directly from Eaton & Co. to Cooke, there was no credit, and, consequently, no right of stoppage. 2d. Viewed as a sale to Barnes & Bros., and a re-sale by them to Cooke, the right of stoppage could not be maintained. For if the vendors knew that the purchase was for the purpose of a

re-sale, or consented to it, they were bound by the new destination as a final and irrevocable delivery ; and, 3d. The opinion says : " If we attempt to make it a sale to Barnes & Bros., and to find a journey, or transit, there was, in fact, nothing of the kind contemplated, so far as the vendees were concerned ;" and add, "upon the delivery to the carrier, it had effectually come to the possession of Barnes & Bros., *as much as ever it was contemplated it would come ;*" and that " this is expressly recognized in numerous cases."

These conclusions commend themselves to us as obvious and sound, and we think they apply with equal force to this case.

We have carefully considered a report of the case of *Ex Parte Golding, Davis & Co.,* in the Court of Appeals in Bankruptcy in England,. published in " The Law Times," of May 8th, 1880, which has been strongly pressed as authority *per contra*, by the counsel for appellant. The report is not very intelligible, as published in the Times, but it seems to have the bearing claimed by counsel. However that may be, we are of opinion that the weight of authority is with the Vermont case above cited, and we are disposed to follow that. We think the firm of Lehman, Abrahams & Co. had not the right to stop the goods *in transitu*, and that the verdict was properly for the plaintiff.

Affirm.