## NELSON *v.* FORBES.

### Opinion delivered December 13, 1926.

1. FRAUDULENT CONVEYANCES—TRANSFER OF PERSONALTY.—Under Comp. Stat. of Okla. 1921, § 6021, providing that transfers of personal property shall be void as to creditors and subsequent purchasers or incumbrancers in good faith, unless followed by immediate delivery and continued change of possession, *held* that the change of possession must be actual and continued and so open and notorious as to apprise the community or those accustomed to deal with the property of such change.

2. FRAUDULENT CONVEYANCES—TRANSFER OF PERSONALTY.—Transfer of cotton by a mortgagor to his landlord in payment of rent before the date of a mortgage, where the cotton was left on the tenant's premises until after the mortgage was executed, was fraudulent as against the mortgagee, under Okla. Comp. Stat. 1921, § 6021, because unaccompanied by a change of possession.

3. APPEAL AND ERROR—FORMER OPINION NOT BINDING.—Where the court on a former appeal decided that the cotton in question had

been delivered, but left open for decision the question of the date of delivery, such decision would not be binding on a subsequent appeal where the facts on the issue of delivery were different from those on the former appeal.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; reversed.

*George W. Johnson* and *G. L. Grant,* for appellant.

*Holland, Holland & Holland,* for appellee.

WOOD, J.  L. D. Nelson brought this action in the Sebastian Circuit Court against Forbes & Sons to recover twelve bales of cotton which had been mortgaged to him in the State of Oklahoma by one William Bromley.  The cotton was brought into Arkansas and sold to Forbes & Sons at Hackett City, Arkansas, by one Z. R. Smith, to whom it had been turned over by Bromley in payment of an alleged rent note upon a farm sold to Bromley by Smith prior to the maturity of the note. Smith had contracted to sell Bromley the land on which the cotton was grown, and, on November 11, 1919, executed a deed to Bromley for the recited consideration of $7,500 cash in hand.  This deed was not then delivered, but was placed in escrow until Bromley could raise the cash payment required.  Before the delivery of the deed Smith rented the land to Bromley for $1,000 for the year 1920 and took a note for that amount, dated January 27, 1920, due November 15, 1920.  Eighteen bales of cotton were grown on the place in 1920, twelve of which were stored in the barn on the place, and, on August 2, 1921, these twelve bales were mortgaged by Bromley to Nelson.  The mortgage was duly executed and filed according to the laws of Oklahoma.

The defendants defended the action on two grounds: First, that they were innocent purchasers; and, second, that Smith was Bromley's landlord, and, as such, had a lien on the cotton for the year 1920 which was superior to appellant's mortgage, and Smith had a right to sell the cotton to the defendants and to apply the proceeds thereof to the payment of his rent.

This is the second appeal in this case. See *Nelson v. Forbes & Sons,* 164 Ark. 462, 261 S. W. 912. The issues and facts as above set forth are fully stated in the opinion in the above case. On the former appeal we said: "The mortgage from Bromley to Nelson was dated August 2, 1921, and one of the disputed questions of fact in the case is whether the cotton so stored had been delivered to Smith prior to the execution and delivery of the mortgage, and the conflict in the testimony makes a question for the jury whether there had been a delivery to Smith prior to August 5, the date the mortgage was filed. Had that been done, this, of course, would be decisive in the case, as the title to the cotton would have passed to Smith upon its delivery to him. It is insisted, however, that the testimony shows that no delivery of the cotton to Smith had ever been made until after the execution of the mortgage, and that Bromley was in possession of it for himself, holding it to be sold when the market price advanced." On the former appeal the judgment of the trial court was reversed, and the cause was remanded "with directions to submit the case under an instruction to the effect that a verdict should be rendered in favor of the plaintiff, unless the jury finds the fact to be that, before the filing of the mortgage, the cotton had been delivered to Smith." On the retrial of the cause in the circuit court, witness Bromley testified in part as follows: That the cotton in controversy might have been rolled from the place where he stacked it in his barn shed in 1920 to a different place. He owed Smith $1,000 for rent. The note was due, and Smith came to see witness in regard to collecting same. Witness told Smith that the only thing he could do was to give him the cotton, which he did. He was asked if he delivered the cotton to Smith at that time, and answered, "Sure, as near as we can call it delivered. I called it delivered, because I never did claim it any more and never thought about selling it after that." The cotton remained at witness' place some time after that. Smith left it there because it was under a shed. He had

no place to put it.   Smith asked witness to let it remain there until the market got higher.   To the best of witness' knowledge, this occurred when the note came due, November 15, 1920.   That was the day that witness sold and delivered the cotton to Smith to pay the note and when Smith asked the witness to let the cotton remain there until he got ready to sell it.   Witness was asked if Smith moved the cotton from the place where it was when witness turned it over to him, and answered, "It was never moved from that place until it was taken by Smith to Hackett, Arkansas, and sold to Forbes.   The cotton remained in the same place until January, 1922."

Smith testified concerning the delivery of the cotton as follows:   Bromley owed him a debt and paid it with twelve bales of cotton in November, 1920.   He held the cotton in Bromley's shed, and sold it to Forbes in 1921 or 1922.   Witness further described the circumstances of the delivery of the cotton as follows:   "He owed me, and says, 'I got twelve bales of cotton, but the price is down. I will deliver it to you, and you can do what you want to with it.' I said: 'We will hold it awhile, and, if it brings more, all right.' "   Witness took charge of the cotton there as his, and went and got it when he got ready to sell it.   This witness' testimony further shows that Bromley paid witness, on January 13, 1922, $742.   That was the date witness sold the cotton to Forbes and gave Bromley credit on his note to witness of that date.   That was the date on which the cotton was hauled from Bromley's place to Hackett.   This credit was entered in 1922, because they did not know what the cotton would bring until that time.   Witness did not know the amount to indorse on the note until the cotton was sold to Forbes.   Witness was asked what he did toward exercising actual ownership over the cotton after October 5, 1920, when he claimed the cotton was delivered to him, and stated that he went to Spiro to try to sell the cotton to cotton buyers and Bromley delivered to him the cotton.

The plaintiff asked the court to instruct the jury to return a verdict in his favor.   The court refused plain-

tiff's request. The court gave, on its own motion, over the objection of the appellant, among other instructions, the following: ''The court instructs the jury that a verdict should be rendered for the plaintiff Nelson, unless the jury finds the fact to be that, before the filing of the mortgage, the cotton had been delivered to Smith, and in that event you should find for the defendant Forbes.''

At the request of the defendants, the court instructed the jury that, ''to constitute a delivery of personal prop-. erty, it is not necessary that there be an actual removal of the goods, but if, at the time of the alleged delivery, it was the intention of the parties that the title and ownership of the property should pass from one to the other and the property is put in the control of the party to whom it is conveyed, and is done openly and notoriously, this constitutes a delivery.'' At the request of the plaintiff the court further instructed the jury as follows:

''The court tells you that, under the laws of the State of Oklahoma, any transfer of title of personal property, to be valid, must be accompanied with immediate, actual, visible and continuous change of possession. Every transfer of personal property, if made by a person having at the time possession or control of the property, is conclusively presumed to be fraudulent and void unless it is accompanied by an immediate delivery of said property and followed by an actual ·and continued change of possession of the things transferred. In this case, before you can find for the defendants, you must find from a preponderance of the testimony that Bromley not only told Smith to take the cotton, sell it, and apply the proceeds of it upon what Bromley owed Smith, but that Smith immediately and actually took possession and continued a visibly changed possession of said cotton, exercising such rights of ownership over it as to· apprise those dealing with Bromley and the cotton that said cotton was the property of Smith and not the property of Bromley prior to Bromley's giving the mortgage to the plaintiff, Nelson,''

The jury returned a verdict in favor of the defendants, and from the judgment in their favor is this appeal.

1. Section 6021 of the Compiled Statutes of Oklahoma for the year 1921 reads as follows: "Every transfer of personal property, other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, is conclusively presumed, if made by a person having at the time possession or control of the property and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void against those who are his creditors while he remains in possession, and the successors in interest of such creditors and against any person on whom his estate devolves in trust for the benefit of others than himself and against purchasers or incumbrancers in good faith subsequent to the transfer."

Under the above statute of Oklahoma, as construed by the Supreme Court of that State, there must be an actual and continued change of possession which is open, notorious and unequivocal. Such a change as to apprise the community, or those who are accustomed to deal with the property, that the property has changed hands and the title has passed from the vendor to the vendee. See *Sankey* v. *Suggs,* 111 Okla. 293, 239 S. W. 149; *Ellett-Kendall Shoe Co.* v. *Ross,* 28 Okla. 697, 115 P. 892; *Cochran Grocery Co.* v. *Harris,* 28 Okla. 715, 116 P. 185; *Swartzburg* v. *Dickerson,* 12 Okla. 566, 73 P. 282; also *Israel* v. *Day,* 41 Colo. 52, 92 Pac. 698. In the case of *Sankey* v. *Suggs, supra,* it is said: "Where the facts are undisputed, it is for the court to determine as a question of law whether such facts show such an actual and con tinued change of possession as will render a transfer of personal property valid as against creditors of the seller."

Under the above statute of Oklahoma, we are convinced that the undisputed testimony in this record shows that there had been no delivery of the cotton to Smith before the appellant Nelson filed his mortgage covering

the cotton in controversy. Indeed, there had been no delivery of the cotton in controversy such as is contemplated by the Oklahoma law until the cotton was hauled from Bromley's barn to Hackett, Arkansas, and sold to Forbes, in 1922. The undisputed testimony shows that Bromley's mortgages to Nelson covering this cotton were duly filed long before that, to-wit, during the years 1920 and 1921. The court therefore, under the undisputed evidence, should have given appellant's prayer for an instructed verdict in his favor.

2. Learned counsel for the appellee contend that the only question that could have been submitted to the jury at the second trial was the issue as to the time of the delivery of the cotton. We do not so construe the language of the former opinion. On the contrary, it occurs to us that the issue to be determined in the trial court, under the directions of this court on the former appeal, was whether the cotton had been delivered to Smith before the filing of appellant's mortgages. This necessarily involved a mixed question of law and fact to be determined under the Oklahoma law, to which our attention was not directed on the former appeal. But, even if this court had decided on the former appeal that the cotton had been delivered by Bromley to Smith, and had left open for decision only the question of the date when such delivery took place, nevertheless such would not be the law of the case on this appeal, because, on the last trial, the facts were different on the issue of whether or not there had been a delivery of the cotton, from the facts developed on the first trial. Hence the rule of "law of the case" cannot avail the appellees. *Hartford Fire Ins. Co.* v. *Enoch,* 79 Ark. 475-479, 96 S. W. 393.

3. The undisputed testimony shows that the value of the cotton in controversy was $1,000. For the error of the court in refusing to grant appellant's prayer for a directed verdict in his favor, the judgment is reversed. Inasmuch as the cause seems to have been fully developed, judgment will be entered here for appellant against appellees in the sum of $1,000.