Missouri Pacific Railroad Company, Thompson, Trustee, v. Clay.

4-6954                                         168 S. W. 2d 621

Opinion delivered February 15, 1943.

*Thos. B. Pryor* and *Thomas Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

SMITH, J.   John W. Clay, Sr., who, with his son, was engaged in the business of mining and shipping coal under the firm name of the Clay Excelsior Coal Company, sued the appellant railroad company for the value of seven cars of coal alleged to have been misdelivered. It was alleged also that on account of this misdelivery the plaintiffs had been unable to meet their payrolls and had, on that account, lost their lease upon which they were mining coal, and they prayed damages on that account in the sum of $2,000. Before the submission of the case the complaint was amended to allege the misdelivery of only five cars, these being described as follows: M P 22510, M P 70736, M P 22582, M P 67631, C. B. & Q. 166268.

After the submission, the complaint was further amended to sue for the value of only four cars, the allegation in regard to M P 70736 being stricken from the complaint.

No witnesses were called by the railroad company, but, at the conclusion of the plaintiffs' testimony, each

side asked for a directed verdict, whereupon the court said: "Gentlemen of the jury, the attorneys for both sides have asked for directions as to this matter and I am directing a verdict for the four cars and I am directing a verdict for the railroad company as to damages for the loss of the coal company's lease, in other words, gentlemen, I have prepared a verdict for you to sign and it says 'We, the jury, find for the plaintiff the value of four cars of coal $504.35 and we find for the defendant on the allegation as to the loss of the lease'."

It is asserted that each side asked a directed verdict and that neither side asked any other instructions. But, the recitals of the record are to the contrary, it being shown that, after asking for a directed verdict, the plaintiffs further requested the court to charge the jury to assess the damages for the loss of the mining lease. In addition to the request for a directed verdict, the railroad company requested the court to charge the jury that the plaintiffs had failed to prove the material allegations of the complaint, both of which instructions were refused. Whereupon, the jury returned a verdict in favor of the plaintiff for $504.35. Exceptions were saved to that order, and in the motion for a new trial it is assigned as error that the court failed to submit to the jury the question of the amount of damages, if any, which the plaintiffs were entitled to recover.

In the case of St. L. S. W. Ry. Co. v. Mulkey, 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339, it was first held in this state that when each of the parties to an action requested the court to direct a verdict in his favor and requested no other instruction, they in effect agreed that the question at issue should be decided by the court and the court's finding had the same effect as the decision of a jury would have had. But it was held in the case of Webber v. Rodgers, 128 Ark. 25, 193 S. W. 87, that this rule would not apply where both parties had asked a directed verdict, but one or the other, or both, had asked additional instructions, in which event the case should be submitted to the jury, notwithstanding the fact that both parties had requested a directed verdict. See,

also, *Holloway v. Parker,* 197 Ark. 209, 122 S. W. 2d 563, 119 A. L. R. 1359.

Plaintiffs had prepared invoices of each car of coal, as the basis of a claim filed with the railroad company, stating the value of the coal in each car. These invoices were introduced in evidence, but they were of themselves, self-serving statements without probative value. The invoice covering car M P 70736 stated the value of the coal in that car to be $58.60. Before the non-suit had been taken, plaintiff was asked the value of the five cars, and he answered: "The five cars, I forget the exact amount, but it was $600 and something."

The plaintiffs offered in evidence a letter from the freight claim agent of the railroad company, to whom the claim for damages had been directed, reading as follows: "This will acknowledge receipt of your claim recorded under claim No. X23098-21-31340 L. D. & C., amount $345.90."

Now, as to two of the cars, the plaintiff testified that the invoice value of the coal there referred to was its market value, but as to the other cars no such testimony was offered, and the only proof of value of those cars was that stated in the invoices. We conclude, therefore, that there was no competent testimony as to the value of the coal, except two cars, and the judgment must be reversed on that account.

As the cause must be remanded for a new trial, we take occasion to discuss another question raised by the pleadings and the testimony. Plaintiffs' testimony was to the effect that all four cars were billed to O. W. Miller Coal Company, Omaha, Nebraska, who were coal brokers engaged in buying and selling coal, and the separate bills of lading issued for each car showed the consignee and destination. There is no intimation or contention that the bills of lading were not ordinary, straight bills of lading. On the day after their issuance, plaintiffs gave the local agent of the originating carrier notice to divert these cars to another consignee. At that time all of the cars, except one, were in transit, this one car then being in the railroad yards of the originating car-

rier. Plaintiff Clay, Sr., testified that this order of diversion was given in ample time to have diverted the shipment, and that the local agent, who issued the bills of lading, told him that the diversion had been ordered and would be made. The diversion was not made, and, in due course, all of the cars, except M P 70736, were delivered to the Miller Company, the consignee named in the bill of lading. It is this alleged misdelivery which forms the basis of this suit.

Upon his cross-examination Clay, Sr., identified a complaint which he had filed against the Miller Company for an accounting. It was there alleged that plaintiffs had shipped the Miller Company a large number of cars of coal. An exhibit to the complaint identified these cars, and included in the number were the cars herein involved. The complaint acknowledged receipt of $895.79 and additional credits of two items, each for $100, as "Cash Advancement for Powder." Judgment was prayed for $..............................

The Miller Company filed an answer in that case admitting the receipt of the coal described in the exhibit to the complaint, including the four cars of coal here in litigation, and alleged the fact to be that the coal had been shipped to it in part payment of advances made to plaintiffs, and that after due credit had been given for all coal received a balance was due the Miller Company of $931, for which sum it prayed judgment. That suit is now pending.

Ignoring that suit, the plaintiffs brought the instant suit in which judgment against the railroad company is prayed for the misdelivery of the coal. The railroad company took the deposition of the president of the Miller Company, but did not offer it in evidence. However, the plaintiffs here read from that deposition two interrogatories and the answers thereto, one of them being: "I state that I was personally the owner of the following cars of coal shipped in February, 1940, by John W. Clay, Jr., doing business as Clay Excelsior Coal Company, from near Excelsior in Sebastian county, Arkansas, to-wit: M P 22582, M P 67631, M P 22510 and

C. B. Q. 166268. The fifth car, being the first one mentioned in the interrogatory, namely, M P 70736, was not shipped to me or to the company or taken into accounts of my company in any way. I knew nothing of this car at the time of shipment, although in the summer of 1940 I heard of this car, but I did not receive the bill of lading for it and it was not entered on my shipping record of cars received from the Clay Company."

No doubt it was this testimony as to the car M P 70736 which induced the dismissal of the suit for the value of the coal contained in that car.

We have, therefore, this situation. The four cars of coal in suit were delivered pursuant to a straight bill of lading, to the consignee named therein, which would be an end of the matter but for the diversion order. The plaintiffs sued the Miller Company for the value of this coal. It is true that plaintiffs' testimony was to the effect that this was a mistake and that there was no intention to sue for the value of the four cars here in question, and that those cars were included in the exhibit without authority and contrary to directions. But, even so, the Miller Company filed an answer admitting the receipt of the four cars. The answer in that case alleged ownership of the four cars, and the president of the Miller Company has testified in this case that his company was the owner of the coal when it was received. The solvency of the Miller Company is not questioned, and the contrary is evidenced by the fact that the plaintiffs here sued to recover a money judgment there against it.

The theory of the plaintiffs in this case is that as absolute owners of the coal they had the right to ship it to whom they pleased, and to divert a shipment already made, provided the diversion order was given in time for the carrier to make the diversion, and that such an order was given in this case. This is the law, but the right to change the shipping order reflected in a bill of lading is not one which may be exercised by a consignor under any or all circumstances. At page 293 of 13 C. J. S., chapter on Carriers, it is said: "If the con-

signor ships goods to a factor or other agent in pursuance of a previous agreement so to do, but the factor or agent has made no advances on the strength of the delivery of the goods to the carrier for him, then his right to the goods has not yet attached, and the consignor may change their direction or countermand the order for delivery, but if the right of the consignee to the goods has become complete on their delivery to the carrier, the consignor cannot by notice or direction to the carrier prevent such delivery.''

The record in this case presents this question of ownership, which, on the remand, should be submitted to the jury.

For the errors indicated the judgment will be reversed, and the cause is remanded for a new trial.