MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE *v.* CLAY.

4-7396                                                    182 S. W. 2d 467

Opinion delivered October 9, 1944.

*Thos. B. Pryor* and *Thomas Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

HOLT, J. Appellees, John W. Clay with his son, were engaged in mining, selling and shipping coal in Sebastian county, Arkansas, as the Clay Excelsior Coal Company. In February, 1940, they shipped four cars of coal, involved here, to the O. W. M. Miller Coal Company of Omaha, Nebraska, under separate, ordinary straight bills of lading, appellees being the consignors and the Miller Company, the consignee, in each of the four bills of lading. On the day following the receipt of the bills of lading by the appellees, they forwarded them, by mail, to the consignee, Miller Company, in Omaha, which received them in due course. Shortly after the bills of lading were mailed to the Miller Company and while one of the cars of coal was still in the yards of the initial carrier and the other three cars were in transit, appellees placed a diversion order for the four cars in the hands of the railroad company. The cars, however, were not diverted in accordance with the order of appellees, but were delivered by appellant to the original consignee, the Miller Company, which company sold the four cars of coal to its customers. Appellees instituted the instant suit to recover for the value of these four cars of coal, which they alleged appellant misdelivered, and recovered judgment.

This is the second appeal in this case. On the former appeal, which appears in 205 Ark. 300, 168 S. W. 2d 621, the judgment was reversed and the cause remanded, (a) because "there was no competent testimony as to the value of the coal, except two cars," and (b) in order that the question of the ownership of the four cars in question at the time of the diversion order might be determined.

We think the question of the ownership of the coal at the time of the diversion order is decisive of this case. After a careful review of the record before us, we have reached the conclusion that the undisputed testimony is to the effect that the Miller Company was the owner at the time of the diversion order by appellees, and therefore that the trial court erred in refusing to instruct a verdict for appellant at the close of all the testimony in compliance with appellant's request therefor.

The law seems to be well settled that a consignor of goods, after he has sold them to a consignee and is no longer the owner, has no right to divert these goods to another consignee while in transit, unless it develops that the original consignee to whom the goods were sold has become insolvent. In the instant case, there is no evidence of the insolvency of the Miller Company.

In Michie on "Carriers," vol. 1, p. 349, § 499, the text writer says: "The *prima facie* effect of a bill of lading, as regards the consignee, is to vest the ownership of the goods consigned by it in him, and the transportation is at his risk, but the proof may show that the consignor is still the owner. If the bill of lading shows that the shipment is made for the benefit of the consignee, it is almost decisive of the consignor's intention to part with the ownership of the property. . . . Right of Carrier to Treat Consignee as Owner.—The consignee named in bill of lading is, for all purposes, considered as the owner of the goods, and the carrier is entitled to treat him as the owner until the contrary appears. The shipment in itself, until it is shown that the consignee is not the owner, vests him with the title of owner."

In 13 C. J. S., p. 290, § 147, it is said: "The true owner of goods transported by a common carrier or for-

warding agent has the right to have his consignment while in transit withheld or diverted at any intermediate point through which it passes. Instructions for a change in the destination of goods in transit must emanate from the party who is the real owner or one who has the authority to divert; otherwise the carrier alters the destination at its peril. . . . In the absence of anything to show the contrary the consignee is presumed to be the owner of the goods shipped, and the carrier before complying with a demand for a diversion of the shipment by one not the consignee is entitled to be furnished with evidence of the ownership of the person making the request and, in case he fails or refuses to furnish it, he cannot complain thereafter of a refusal to divert the shipment. As the consignee is presumptively the owner of the goods in transit, unless the carrier is advised that the shipper has retained title, the carrier is justified in complying with the consignee's request to deliver the goods at some other destination than that designated by the consignor and incurs no liability to the latter by so doing.''

And, in *M. & L. R. R. R. Co. as Reorganized,* v. *C. M. Freed,* 38 Ark. 614, this court held: (Headnote 2) ''Upon the consignment of goods the title becomes vested in the consignee, absolutely and against all the world, subject only to the carrier's lien for freight, and the consignor's right of stoppage in *transitu* upon the consignee's insolvency.''

On this question of ownership, the testimony is to the following effect. In June, 1940, subsequent to the shipment of the four cars of coal in question and the diversion order in February, 1940, appellees sued the Miller Company in the Sebastian circuit court for the value of approximately forty cars of coal, which they alleged they had sold and shipped to the Miller Company during the months of January and February, 1940. The four cars involved here were included among these forty cars. There was evidence by Clay, Sr., that these four cars were erroneously included in this Sebastian county suit, without his knowledge or consent. The complaint further alleged that the Miller Company, consignee of

the coal in question, was "engaged in the dealing of coal, purchasing same for resale in the several states of the American Union . . . from mines in the State of Arkansas." Appellees admit filing this Sebastian county suit and nowhere denied that the remaining thirty-six cars in the suit were sold to the Miller Company. They admit that the four cars were shipped to the Miller Company as consignee, unconditionally, and assert that at the time the diversion order was given the Miller Company owed them money, and that they owed the company nothing.

John W. Clay testified: "Q. Along with the mining of coal, you also sold coal? A. Yes sir. Q. Along in 1940, you shipped certain cars of coal that were not delivered according to orders. A. Yes sir. Q. Explain what happened. A. I originally shipped 4 cars to O. W. M. Miller & Company. During the past two years we have had this agreement to ship him coal. I did not ship him more until his bill had been paid. . . . Q. The same day that you got the bill of lading from the Midland Valley, your bookkeeper mailed it to O. W. M. Miller? A. Yes sir. Q. That was several days before you told the Midland Valley to divert the coal? A. Got it on the 14th and sent it on the 15th. Q. You told them to divert it on the 15th, so you sent the bill of lading before you told them to divert? A. Yes sir."

C. E. Brown, appellees' bookkeeper for many years, testified: "Q. Claude, did you attend to the billing of these cars, MP-22510, CBQ-166268, MP-67631 and MP-22582, the coal described in this diversion order Exhibit E? Did you make the bills of lading? A. Yes, lots of the time Mr. Sanders helped. Q. When you made out the bills of lading, what did you do with them? A. Mr. Sanders got a copy. Q. You got the original? A. Yes, sir. Q. What did you do with it? A. Sent it to buyer. Q. In this case, the O. W. M. Miller Coal Company? A. Yes, sir. . . . Q. The bills of lading you did send to Miller, what was the purpose? A. You send the bill of lading when you sell coal. Q. When you sell coal and send it to him, you

also send the bill of lading? A. Yes, but you can divert a car of coal any time you get ready."

O. W. M. Miller, owner and operator of the O. W. M. Miller Coal Company, testified positively that he was the owner of the four cars involved here. He testified by deposition and cross-examination was waived.

John W. Clay further testified: "Q. You heard the reading of the Miller deposition. Have you ever agreed to let Mr. Miller or the O. W. M. Miller Coal Company have the entire output of your mine? A. No sir. Q. With reference to the shipping of these four cars . . .? A. Miller owes me $900 and some cents besides for these cars."

We find nothing in the record contradicting the positive testimony of appellees' bookkeeper, Brown, to the effect that the four cars in question were sold to the Miller Company, the original consignee in the four bills of lading. The most that can be said of the testimony of John W. Clay is that he didn't owe the Miller Company anything when the cars in question were shipped to that company. Whether appellees owed Miller or Miller owed appellees could make no difference if the Miller Company owned the coal and was solvent when the diversion order was made. As heretofore indicated, we think the undisputed testimony shows that the coal in question was sold to the Miller Company and that it was the owner at the time of the diversion order. This being true, appellant was not liable for refusing to obey the diversion order, and the trial court erred in refusing appellant's request for an instructed verdict at the close of all the testimony.

The facts on this appeal are materially different from those on the former appeal. The decision in that case, therefore, would not become the law of the case. On this appeal, the complete deposition of O. W. M. Miller, taken on interrogatories, was introduced in evidence. This additional evidence of Miller presents additional facts and shows that he was not a factor, or the agent of the consignor, appellees here, but was buying coal from them and was, in fact, the owner of the coal in question here. Nelson v. Forbes, 172 Ark. 346, 289 S. W. 10.

For the error indicated, the judgment is reversed and since the cause appears to have been fully developed, it is dismissed.