JONES *et al. v.* GROGAN *et al.,* executors.

1. There was no error in striking a ground of *caveat* to the probate of a will, alleging that it " was executed by [the testator] under a mistake of fact as to the conduct of [a brother and heir at law] towards [the testator], he having expressed himself as being unwilling to provide for his brother, who is old and feeble and poor, as the condition of [the testator's] estate would warrant, because he claimed that [this brother] had had a difficulty with him, when in truth and in fact there had been no difficulty." Especially is this so, when an annuity, not merely nominal, was bequeathed to the brother alluded to in this ground of *caveat.*

2. Nor was there any error in striking this ground of *caveat* after the same had been amended by alleging that the testator believed the brother in question owned property to the amount of $3,000, when in fact the brother owned only $300. An heir at law cannot, in any event, *caveat* the probate of a will on the ground that at the time of its execution the testator was misinformed or mistaken as to the amount or value of the property owned by such heir.

3. That the above mentioned original amended grounds of *caveat* were offered "for the purpose of showing that [the testator] at the time of executing said paper was not of sound and disposing mind and memory " did not add to their validity, it appearing that another and distinct gound of *caveat* alleging want of mental capacity to make a will was voluntarily abandoned by the caveators.

4. Undue influence to procure the execution of a will cannot be proved by the opinion of a witness that such influence was used, unless he testifies to relevant facts upon which his opinion is based.

5. The court properly refused to allow a witness to testify in a general way that there was something in the " manner or con-

duct" of certain persons named as beneficiaries in the will and charged with having exercised undue influence in procuring its execution, evidencing that the testator was under their influence; it not being stated, in offering this testimony, what was the "manner" or the "conduct" sought to be shown, or that the same related to matters occurring in the presence of the testator.

6. If, in the present case, there was any error in rejecting evidence of declarations alleged to have been made by such persons as to what they could or would induce the testator to do with respect to matters in no way connected with the testamentary disposal of his estate, it was not error which would require or even justify the granting of a new trial; this evidence, if admissible at all, being of little probative value, and the evidence as a whole showing clearly that the execution of the will was the free and voluntary act of the testator.

7. Declarations of a testator, apparently free and voluntary and not made under the restraint of another, tending to show that the paper propounded as his will was prepared in accordance with his wishes, and that he was satisfied with it, are, when the paper has been attacked on the ground that its execution was procured by undue influence, admissible in evidence to show that it was his true last will and testament; but his declarations to the contrary, for the purpose of invalidating the paper as a will, are not admissible.

8. In view of the evidence, and of the fact that the general ground of *caveat* alleging want of testamentary capacity was abandoned, there was no error in charging the jury, "the issue in this case is narrowed to the sole one of undue influence, except so far as mental weakness demonstrates the susceptibility to such influence."

June 12, 1896. By two Justices. Argued at the last term.

Appeal. Before Judge Reese. Elbert superior court. March term, 1895.

*W. M. & M. P. Reese, J. N. Worley, W. D. Tutt* and *H. J. Brewer,* for plaintiffs in error.

*J. P. Shannon, G. C. Grogan, P. P. Proffitt, Hamilton McWhorter* and *W. M. Howard,* contra.

LUMPKIN, Justice.

A paper purporting to be the last will and testament of George W. Dye was propounded for probate in solemn form, and a *caveat* was filed by some of his heirs at law.

The case was tried on an appeal to the superior court from the court of ordinary, and resulted in a verdict in favor of the will.

1. One of the grounds of the *caveat* was that the paper was executed under a mistake of fact as to the conduct of Martin Dye, a brother of the testator, the *caveat* declaring that George W. Dye had "expressed himself as being unwilling to provide for" this brother as the condition of the testator's estate would warrant, "because he claimed that [this brother] had had a difficulty with him, when in truth and in fact there had been no difficulty." By reference to the will, it appears that the testator directed his executors to invest $1,000, and pay the interest thereon annually to this brother during the natural life of the latter. The *caveat* fails to declare at what time George W. Dye expressed an unwillingness to provide for his brother, or when he made the "claim" that there had been a difficulty between them. Nor is there any distinct allegation that but for the testator's belief in the supposed difficulty, any other or further provision than that which the will actually contains would have been made for Martin Dye. For aught that appears, whatever the testator said on this subject might have been months, or even years, before the will was executed. Therefore, this ground of *caveat* hardly comes up to the requirements of section 2403 of the code, even if that section can be held applicable to a case like this. It provides that: "A will executed under a mistake of fact as to the existence or conduct of the heirs at law of the testator is inoperative, so far as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him." We do not think it was ever contemplated that this section should be invoked to invalidate a will because of an alleged mistake of fact by a perfectly sane testator concerning a matter within his own personal knowledge and of such a nature that he really could not be mistaken about it. Unless he was laboring

under some delusion or hallucination, George W. Dye must have known whether or not there had been a "difficulty" between himself and his brother.    The positive evidence of his own senses would certainly assure him of what had occurred between himself and his brother.    It may be that some trivial disturbance in their relations did occur which he chose to regard as a "difficulty," but which others would not so regard.    Be this as it may, the testator had an undoubted right to his own opinion on this subject, and certainly his will cannot be disturbed, even though he erroneously considered and chose to regard a particular occurrence as a "difficulty" which, properly and accurately speaking, was not one.    The point is, he knew the facts and circumstances attending the occurrence to which he referred; could not be mistaken as to what they were; and had the right to construe and act upon them as he chose. Nor would the testator be charged with accurately remembering these facts and circumstances which he, at the time of their occurrence, regarded as equivalent to a "difficulty"; but, in making his will, he would have a perfect right to act upon the impression they had made upon his mind and which still lingered in his memory.    The question of memory is not involved.    The testator may have had a difficulty which he forgot; but in that event, its occurrence would not have affected his testamentary dispositions.    Conceding him to be perfectly sane and free from delusions—as was practically admitted in this case,—he could not have remembered, discussed and been influenced by something which never took place at all.

While we do not rest our decision on the point now in hand upon the fact that an annuity, amounting to about $70 per annum was bequeathed to Martin Dye, this circumstance is at least entitled to some weight in arriving at the conclusion that this ground of the *caveat* ought not to be sustained.

2. The amendment to the above mentioned ground of

*caveat* added nothing to its merits. If a will could be set aside merely because a testator entertained an erroneous belief as to the amount of property owned by one of his heirs at law for whom, in the latter's opinion, the will had not made an adequate provision, no will would be safe. It would be an exceedingly dangerous precedent, and one not sanctioned by any authority, to hold that a will could be rendered inoperative on such a ground as this, supported only by parol evidence.

3. It was insisted, however, that the court erred in striking the ground of *caveat* and the amendment to the same above referred to, when offered for the purpose of showing that at the time of executing the paper propounded as a will the testator was not of sound and disposing mind and memory. We have already dealt with the first question made in this case, upon the assumption that the testator was conceded to be sane and free from any mental defect which would deprive him of testamentary capacity. In order to show that the point now being considered is entirely devoid of merit, it is only necessary to add that there was another and distinct ground of *caveat* alleging the want of such capacity on the part of George W. Dye; that this ground was voluntarily abandoned by the caveators; and that the evidence showed beyond cavil or question that he was sane and thoroughly competent to make a will.

4. It would seem, at least in some instances, that the question whether or not undue influence was used to procure the execution of a will is, under the rules of evidence, a matter of opinion. A witness will not, however, in any case be permitted to testify to his opinion that such influence was used, without stating the relevant facts upon which his opinion is based. See Rollwagen *v*. Rollwagen, 63 N. Y. 520; *McLean* v. *Clark*, 47 *Ga.* 24; *Howell* v. *Howell*, 59 *Ga.* 146.

5. The caveators sought to prove generally by a witness that there was "something in the manner or conduct"

of certain persons reputed to be the illegitimate children of the testator and one Lucinda Dye, his concubine, which evidenced that he was under their influence or control. The record does not inform us more definitely than as just stated concerning the nature of the evidence sought to be elicited upon this subject. It was manifestly too loose, indefinite and uncertain to be admitted or considered.

6. The caveators also desired to prove that the children of Lucinda Dye had declared, on some occasion, that they could, or would, procure the testator to sell certain land to another person who wished to purchase the same. If evidence of this sort was admissible at all, which we gravely doubt, rejecting it would not, in this case, be cause for a new trial. It bore very remotely indeed upon the questions at issue; was in no way connected with the testamentary disposition of George W. Dye's estate; and in view of the overwhelming weight of the evidence showing that the will was his free and voluntary act, could have been of but little probative value.

7. One of the grounds of *caveat* was, that the execution of the paper propounded was procured by the undue influence of Lucinda Dye and her children. This being so, the declarations of the testator, not made in the presence of these persons or while under any restraint or coercion of any kind, tending to show that the paper propounded had been prepared in accordance with his wishes and that he was satisfied with it, were admissible in evidence. See 2 Whart. Ev. §1012. On the other hand, declarations to the contrary, offered for the purpose of invalidating the paper as a will, were not admissible. Said Thompson, J., in Jackson, Coe *et al.* v. Kniffin, 2 Johns. 31, "to permit wills to be defeated, or in any manner whatever impeached, by the parol declarations of the testator, appears to me repugnant to the very genius and spirit of the statute, and not to be allowed." And see the authorities cited by Atkinson, J., in *Mallery* v. *Young*, 94 *Ga.* 808.

8. Under the evidence in this case, and in view of the pleadings as they stood when the issue was finally submitted to the jury, the charge complained of (which is quoted in the 8th head-note) contained no substantial error and affords no cause for a new trial. Indeed, upon the merits, there could have been but one fair and proper result, and it was reached in the verdict rendered. *Judgment affirmed.*