## 10115 .

### IN RE SPIRES' WILL.

### SPIRES ET AL. v. SPIRES ET AL.

#### (97 S. E. 847.)

1. WILLS—PROOF—DECLARATIONS OF TESTATOR.—In a proceeding to prov(
a will, claimed to be a forgery, a declaration of deceased tending to
show that he had no confidence in, or friendship for, a witness to the
will, was admissible as tending to show that he would not have called
him as a witness.

2. WILLS—HARMLESS ERROR—EXCLUSION OF EVIDENCE.—In a proceeding
to prove a will, claimed to be a forgery, it was not prejudicial error
to exclude a declaration of deceased showing lack of confidence in or
friendship for a witness to the will, where a number of persons testi-
fied that such witness was actually present at the making of the will.

Before BOWMAN, J., Lexington, Spring term; 1918.
Affirmed.

In the matter of the will of James H. Spires, deceased; Annie M. Spires and W. M. Spires, proponents, and W. A. Spires and others, contestants. From a judgment sustain-- ing the will, the contestants appeal.

*Messrs. D. S. Henderson* and *C. M. Efird,* for appellants. *Mr. Efird* submits : *That the mental state of. an individual may be proven and is properly proven by his unsworn decla- rations with reference to that mental condition:* Chamber- layne on Evidence, vol. IV, sec. 2643; 14 Allen (Mass.) 255, 258; Wigmore, vol. III, sec. 1730.

*Messrs. Timmerman, Graham & Callison* and *T. C. Stur- kie,* for respondents.

January 15, 1919.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The issue in the probate and in the Circuit Court was will or no will.

The testator was James H. Spires.

The probate Court found that the will was a forgery.

A jury in the Circuit Court sustained the will, and the appeal comes here from that judgment.

There are but two exceptions, and counsel for the appellant stated at the bar and in the printed argument that no reliance was put on the second exception.

The issue made by the first exception is, therefore, the only matter up for consideration.

That issue arises out of the exclusion of an expected answer by the witness, Lucas, sworn by the contestants.

One of the witnesses to the will was Wade H. Spires.

The contestants were charging that the will was a fabrication. .

The witness, Lucas, was asked if he had aforetime talked with James H. Spires, the testator, about Wade, the witness.

The relevancy of the expected answer counsel say was to suggest to the jury the inference that the testator would probably not have called as a witness to his will a man about whom he held an indifferent opinion.

Counsel for the contestants thus stated at the instant his idea of the competency of the testimony: "Here is a man, Wade Spires, who claims that James H. Spires met him here in Lexington and invited him to go to that gentleman's office and witness his will, and that he did witness it. Now, we want to show the relations between James H. Spires and Wade H. Spires from the mouth of the testator himself."

And in the printed argument the case is thus stated: "The evidence was sought simply to bring to the attention of the jury the fact that the deceased had no confidence in the witness and for that reason would not have selected him among all the people present at that place to manage for him the gathering of the witnesses and to overlook the execution of the most important instrument that he had executed during his life."

The question was plainly allowable; and if Lucas had answered that James had no confidence in Wade, the answer would have been competent.

Lucas might have testified that James and Wade were sworn enemies, because he saw them fight and swear at one another.

The competency of that testimony will not be denied.

Of the same character of evidence is James' declaration to Lucas of such enmity.

Such a declaration is as good evidence of James' opinion of Wade, as would be James' oath to the opinion. See Jones on Ev., sec. 483.

The Court might well have allowed the answer; but a refusal to do does by no means, under the circumstances of the case, work a reversal of the judgment.

The tendency of the refused testimony was to prove that Wade was not a witness to an authentic will, for the reason that James would not have called him as a witness, and for the reason James had spoken disparagingly of Wade.

But six witnesses, other than the witnesses to the will, testified that James and Wade were at Lexington Courthouse the day on which the will bears date; four witnesses, other than the witnesses to the will, testified that James and Wade and the two Williams, who witnessed the will, were together in the office where the will was executed; two witnesses, other than those who signed as witnesses, testified that James asked Wade to steady his hand as he held the pen to subscribe his name.

The testimony of Lucas was at best of doubtful relevancy; every lawyer knows that strangers are called on occasionally to witness a will; and the circumstances that a testator had, *a year before the signing,* spoken in disparaging terms of a man does not necessarily warrant the inference that such a man would not be called to witness a will.

But if such an inference is warrantable, it fades away in the presence of direct and positive testimony that the man was so called to sign.

·A reversal of the judgment for the exclusion of that character of testimony, under the circumstances of this case, would be to exalt a theory above a fact.

The judgment below is affirmed.