REA *v.* PURSLEY *et al.*

No. 7434.   JULY 18, 1930.

*W. M. Henry* and *Norman Shattuck,* for plaintiff.
*C. D. Rivers* and *Rosser & Shaw* for defendants.

HINES, J.   J. H. B. Rea offered for probate an instrument purporting to be the will of his sister, Joanna Pursley, who, before her marriage to C. N. Pursley Sr., was Joanna Rhinehart.   C. N. Pursley Jr. filed a caveat, alleging that Joanna Pursley died on January 10, 1928, never having had issue, leaving her husband, C. N. Pursley Sr. (who died after her death) as her sole heir at law, and as such entitled to her estate under the statute of distributions; that caveator was the son and the only heir at law of C. N. Pursley Sr., who inherited the entire estate of the testatrix; that the signature of testatrix to said instrument was forged; that the names of W. M. Roberson W. W. Roberson, and T. J. Edge, the persons signing said instrument as witnesses, were not signed by them or in the presence of or with the consent of Joanna Pursley; and that said paper was not the will of said Joanna Pursley but was a forged instrument.

On the trial the testimony offered in behalf of the propounder tended to show the following:   The instrument offered for probate as the last will of Joanna Pursley was found, sometime after her death, among the papers of her nephew, W. M. Roberson, who was one of the apparent witnesses to said instrument.   At the time the will was offered for probate, the three persons who purported to be the attesting witnesses thereto were dead.   Tom Edge, a son of T. J. Edge, was sworn as a witness by the propounder.   This witness was about 12 years of age at the time of the alleged execution of the will. He testified that his father and the other two attesting witnesses went to the residence of Mrs. Rhinehart (Mrs. Joanna Pursley) in Chattooga County, some distance from the home of the witness, and of the attesting witnesses, for the purpose of doing some work on a gin, that he went with them, and that while at the home of Mrs. Rhinehart, and while he and the attesting witnesses were at the dinner-table, Mrs. Rhinehart said that she had a paper that she wanted them to witness, and brought it to the table, and they signed.   This witness further testified:   "What makes me remember it, Mr. Roberson, that is Uncle Zip, says, 'Aunt Joe, there is no use in making a paper like that; you will outlive any of us.'   They all signed the paper there.   I seen W. M. Roberson sign a paper that looked like that.   I seen W. W. Roberson make his mark.   I saw my father sign that paper.   I know my father's signature. She gave that paper, after it was signed, to Button Roberson and

told him to keep it. I did not see Mrs. Rhinehart sign. I do not recall that I saw her sign it, I suppose. The paper was in her possession. She just said it was a paper; she did not say what it was when she asked them to witness it. I just thought it was a will by what Uncle Zip said about it. I could not say what the make-up of it was, but that looks something like the size of it" (instrument purporting to be the will of Mrs. Pursley being exhibited to witness). The propounder introduced other witnesses as to the genuineness of the signatures of Mrs. Pursley and the attesting witnesses. Propounder further introduced the testimony of witnesses as to the similarity between the handwriting of the signature of Mrs. Pursley to this instrument and the signatures of the attesting witnesses, and genuine signatures of the testatrix and attesting witnesses. Propounder also offered statements made to witnesses by the alleged testatrix during her lifetime, tending to show that she had executed a will.

The evidence offered by the caveator tended to establish the following: The instrument offered for probate had been changed by an erasure of the date therein as originally written on the typewriter, and another date substituted. The body of the instrument and the attestation clause recited the name of Mrs. Joanna Rhinehart as the testatrix, while the signature was Joanna Pursley. Caveator offered the testimony of a number of witnesses, tending to show that the signature to the will was not the genuine signature of Joanna Pursley, and introduced in evidence several of her genuine signatures for the purpose of comparison by the jury with the signature to the purported will; also, the testimony of George M. Clark, a handwriting expert, who, after giving his reasons, testified that in his opinion the signature of Joanna Pursley to the purported will, and the signatures of the witnesses thereto, were forgeries; also, the testimony of several witnesses as to statements made by Mrs. Pursley during her lifetime, to the effect that she had not executed any will.

The jury returned a verdict in favor of the caveator. The propounder moved for a new trial upon the general grounds, and upon several special grounds which are dealt with hereinafter.

■ The trial judge, over objection of propounder, permitted caveator to introduce the following evidence: W. C. Hatfield testified as follows: "She [Mrs. Joanna Pursley] said, 'Everything I

got goes to Charley. I have not given any will to anybody, have not signed one, and never will so long as I live.'" Grady Ramey testified: "She [Mrs. Pursley] said I could make an investigation so as to see there wasn't any will; but if I wanted to make an investigation before I paid her money, to go ahead and do it. She told me there wasn't any will made." Eva Jane Smith testified: "She [Mrs. Pursley] says, 'I don't mean to will anybody anything or give anybody anything; I don't know what Charley will want to do with what there is when I am through with it, and I expect for him to do just as he pleases with it when I am through with it.'" Mrs. Ada Cooper testified: "She [Mrs. Pursley] said, 'Why, Mattie, I don't need to make a will. I have not got but one heir, and that is Charley, and I don't need to make a will, and I am not going to make a will.'" Propounder objected to the admission of the testimony of each of the above witnesses, upon the ground that the will of a testator can not be defeated, or in any manner impeached, by his declarations. The court overruled the objection.

We are confronted with the decision of this question: Were the post-testamentary declarations of an alleged testatrix, to the effect that she wanted her entire estate to go to her husband, that she had never made a will, and never would as long as she lived, and that there was no necessity of her making a will, as she had but one heir, who was her husband and who would take her estate, admissible upon the probate of an instrument offered as the will of such testatrix, by which she gave her estate to her brother and sisters to the exclusion of her husband, and to the probate of which a caveat was filed by the sole heir of the husband, who died the same day, but shortly after the wife, upon the ground that the instrument offered for probate was not the will of the alleged testatrix, but was a forgery, upon which issue there was independent evidence both pro and con? Such post-testamentary declarations of the alleged testatrix are undoubtedly hearsay evidence, which does not derive its value from the credit of the witnesses, but rests mainly on the veracity and competency of other persons. It is generally without probative value. *Eastlick* v. *So. Ry. Co.,* 116 *Ga.* 48 (42 S. E. 499); *Tison* v. *State,* 125 *Ga.* 7 (53 S. E. 809); *Estill* v. *Citizens & So. Bank,* 153 *Ga.* 618, 625 (113 S. E. 552). Its very nature shows its weakness, and it is admitted only in specified cases from necessity. Civil Code (1910), § 5762. This ex-

clusion of hearsay evidence is the general rule; but there are exceptions to this rule. Our Code specifies a number of cases in which hearsay evidence is admitted. One of these cases arises where, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motive. Such evidence as to conduct and motive is admitted, not as hearsay, but as original evidence. § 5763. Our Code specifies other cases in which hearsay evidence is admissible. "Pedigree, including descent, relationship, birth, marriage, and death, may be proved either by the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogies, inscriptions, 'family trees,' and similar evidence. § 5764. So declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as a part of the res gestæ. § 5766. So declarations of a person in possession, in disparagement of his own title, are admissible in evidence in favor of any one, and against privies; and they are also admissible in favor of the title of the declarant for the purpose of showing his adverse possession. § 5767. So the declarations and entries of a person, since deceased, against his interest, and not made with a view to pending litigation, are admissible in evidence in any case. § 5768. So the books of account of any merchant, shopkeeper, physician, blacksmith, or other person doing a regular business and keeping daily entries thereof, may be admitted as proof of such accounts under specified conditions. § 5769. So hearsay evidence as to declarations of deceased persons as to ancient rights, and made before the litigation arose, are admissible to prove matters of public interest in which the whole community are supposed to take interest and to have knowledge. § 5770. So ancient documents, purporting to be a part of the transaction to which they relate, are admissible. § 5771. Traditionary evidence as to ancient boundaries and landmarks is admissible in evidence, the weight to be determined by the jury according to the source whence it comes. § 5772. So the testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by any one who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies. § 5773.

These are cases specified in the Code in which hearsay evidence is admissible; and these form exceptions to the general rule which excludes hearsay testimony on the ground that it is lacking in probative value. The statements of the testimony excepted to in this case do not fall within any of the exceptions to the general rule excluding hearsay evidence, specified in the above sections of the Code. Is this specification of cases in which hearsay evidence is admissible exhaustive and exclusive of all other cases? We think not. In *Patterson* v. *Hickey*, 32 *Ga.* 156, this court held that when the question involved was revocavit vel non, parol evidence as to the acts and declarations of the testator, made at any time between the making of the will and the death of the testator, is admissible. In the case cited the will involved was written on one whole sheet of paper, and when it was offered for probate it was in two pieces, having the appearance of having been cut or torn. This instrument, after the death of the testator, was found in a bureau drawer, separate from the testator's other papers, and in a place where he did not usually deposit his papers for safe-keeping. The caveators offered to prove declarations of the testator that he intended that his children and grandchildren should share his property equally. They were offered for the purpose of showing that the will, which made a different disposition of the property, had been revoked. The ruling made in that case was approved and followed in *McIntyre* v. *McIntyre*, 120 *Ga.* 67, 72 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606). This court held that the admission of hearsay evidence was proper in a case other than those specified in our Code. In *Cobb* v. *Battle*, 34 *Ga.* 458, it was ruled that "The declarations of a testator, before or after the execution of his will, are competent evidence to prove an attempt on his part to defeat the policy of the statutes forbidding the manumission of slaves." In *Williams* v. *Nabers*, 14 *Ga.* 286, this court held that parol evidence of a testator's previous declarations is admissible when offered, not to explain, alter, or contradict a will, but simply to show, as presumptive evidence, the testamentary character, long-continued expressions of a purpose to dispose of his property in a particular way, and to rebut the presumption of undue influence. In that case this court said that if such evidence was admissible for the above purposes it was likewise admissible to assail such capacity or to afford presumption of undue influence. In *Dennis* v. *Weekes*,

51 *Ga.* 24, this court held that "Parol evidence of the declarations of a testator, expressing dissatisfaction with his will, and made shortly after its execution," were admissible, not to prove that fraud was practiced upon him, or undue influence was actually exercised, but as tending to show the state of testator's mind, and that he was in a condition to be easily influenced.

In *Mallery* v. *Young*, 94 *Ga.* 804 (22 S. E. 142), a will was contested upon the ground that the propounder and another had falsely and fraudulently represented to the testator that the caveatrix was not in fact his niece, and that by means of this fraud and deception the testator was induced to disinherit her, and bequeathed his estate to the propounder and such other person. There was no evidence whatever that any representations had ever been made, except the declarations of the testator himself. This court held that the caveat was not sustained, and that the verdict setting aside the will was without evidence to support it; that the declarations of the testator were admissible to show the state of his mind at the time of executing the will, but were not admissible for the purpose of showing that the facts stated by him were true. In *Jones* v. *Grogan*, 98 *Ga.* 552 (25 S. E. 590), it was said that "Declarations of a testator, apparently free and voluntary and not made under the restraint of another, tending to show that the paper propounded as his will was prepared in accordance with his wishes, and that he was satisfied with it, are, when the paper has been attacked on the ground that its execution was procured by undue influence, admissible in evidence to show that it was his true last will and testament; but his declarations to the contrary, for the purpose of invalidating the papers as a will, are not admissible." In that case the declarations offered went to sustain the will, and were not offered for the purpose of invalidating the instrument offered for probate. It does not appear that any declarations were offered for the purpose of invalidating the paper. Furthermore it does not appear, if such declarations were offered, that there was no independent evidence tending to establish the facts alleged in such declarations. In that case the issue was one of undue influence. Where a will is contested upon the grounds that there was fraud in its procurement, or want of mental capacity to make it, or that it was procured by the exercise of undue influence on the maker, declarations of the testator tending to show

such fraud, or want of capacity to make it, or that it was procured by the exercise of undue influence on the maker, are admissible solely upon the question whether the testator had such mental capacity or was then in such mental condition as to be unduly influenced, or easily defrauded. Such declarations are not admissible to prove the fact of fraud, or mental incapacity, or the exercise of undue influence, and generally such declarations, standing alone, amount to no more than hearsay evidence; and to permit the person to destroy, defeat, or revoke a will solemnly executed, by mere declarations contrary to the testamentary scheme expressly declared in the written instrument, is to overturn and destroy one of the most salutary of the elementary rules of evidence. *Dennis* v. *Weekes, Mallery* v. *Young,* and *Jones* v. *Grogan,* supra, *Underwood* v. *Thurman,* 111 *Ga.* 325 (2) (36 S. E. 788); *Credille* v. *Credille,* 123 *Ga.* 673 (51 S. E. 628, 107 Am. St. R. 157); *Hubbard* v. *Rutherford,* 148 *Ga.* 238 (2) (96 S. E. 327); *Purser* v. *McNair,* 153 *Ga.* 405 (112 S. E. 648); *Pennington* v. *Perry,* 156 *Ga.* 103 (4) (118 S. E. 710); *Houseman* v. *Voak,* 157 *Ga.* 122 (121 S. E. 119); *Ezell* v. *Mobley,* 160 *Ga.* 872 (11) (129 S. E. 532).

The cases just cited involved issues of fraud or undue influence in the procurement of the instrument propounded, or lack of mental capacity to execute the instrument. The case at bar involves the issue of the forgery or not of an instrument offered for probate as the last will of a testatrix. The question is whether declarations of the alleged maker of the will that she had never executed any will were admissible in favor of the caveator, who in his caveat alleged that the instrument offered for probate was not the will of the alleged testatrix, but was a forgery. The propounder contends that such declarations of the alleged testatrix that she had never made a will were mere hearsay, and were not admissible under the rule which excludes hearsay evidence or any exception to that rule. So the controlling question in this case is, under what circumstances and for what purposes are the declarations of a testator admissible on the issue of forgery raised in the proceeding to probate an instrument at his last will? Are such declarations admissible at all upon the issue of the forgery of the instrument? If so, for what purpose? On the admissibility of such declarations the decisions are in conflict. Some courts hold that such declarations are not admissible either to support or overthrow a will.

Throckmorton *v.* Holt, 180 U. S. 552 (21 Sup. Ct. 474, 45 L. ed. 663) ; Stevens *v.* Vancleve, 4 Wash. C. C. 262, Fed. Cas. No. 13,312; Leslie *v.* McMurty, 60 Ark. 301 (30 S. E. 33) ; Re Gregory, 133 Cal. 131 (65 Pac. 315) ; Re James, 124 Cal. 653 (57 Pac. 578, 1008) ; Robinson *v.* Brewster, 140 Ill. 649 (30 N. E. 683, 33 Am. St. R. 265) ; Walton *v.* Kendrick, 122 Mo. 504 (25 L. R. A. 701, 27 S. W. 872) ; Wells *v.* Wells, 144 Mo. 198 (45 S. W. 1095) ; Farleigh *v.* Kelley, 28 Mont. 421 (63 L. R. A. 319, 72 Pac. 756) ; Boylan *v.* Meeker, 28 N. J. L. 274) ; Re Gordon, 50 N. J. Eq. 397 (26 Atl. 268), affirmed, 52 N. J. Eq. 317 (30 Atl. 19) ; Jackson *v.* Kniffen, 2 Johns. 31 (3 Am. D. 390) ; Johnson *v.* Hicks, 1 Lans. (N. Y.) 150; Re Lawlor, 86 App. Div. 527 (83 N. Y. Supp. 726) ; Re Cocoran, 145 App. Div. 129 (129 N. Y. Supp. 165) ; Chaney *v.* Coulter, 29 Ohio C. A. 177, 45 Ohio C. C. 481; Ricketts *v.* Ricketts, 151 Tenn. 525 (267 S. W. 597) ; Kennedy *v.* Upshaw, 64 Tex. 411; Maris *v.* Adams (Tex. Civ. App.), 166 S. W. 475; Forner *v.* Ferrell, 4 W. Va. 729; LaRue *v.* Lee, 63 W. Va. 388 (14 L. R. A. (N. S.) 968, 129 Am. St. R. 978, 60 S. E. 388) ; Provis *v.* Reed, 5 Bingh. 435, 130 English Reprint, 1129. In Provis v. Reed, supra, Best, C. J., gave the reason for this rule. It may be well to keep in mind that some of the above cases deal with revocation of wills and with statutes requiring such revocation to be in writing.

Probably the majority of the earlier cases are in harmony with Throckmorton *v.* Holt, supra, but it has been suggested that this is due to the fact of the prestige of the Supreme Court of the United States, which rendered the decision in that case. In the later cases the correctness of the rule laid down in that case has been questioned and repudiated. Now the weight and trend of the authorities are in favor of the admissibility of declarations of an alleged testator, both those made before and those made after the date of the purported will, on the issue of forgery of the will, where the issue is raised by other substantial evidence, and proof of the declarations is corroborative of other testimony. Turner *v.* Hand, 3 Wall. Jr. 88, Fed. Cas. No. 14,257; Alexander *v.* Alexander, 214 Ala. 291 (107 So. 835) ; Re Morrison, 198 Cal. 1 (242 Pac. 939) ; Re Thompson, 200 Cal. 410 (253 Pac. 697) ; Baird *v.* Shaffer, 101 Kan. 585 (L. R. A. 1918D, 638, 168 Pac. 836) ; Atherton *v.* Gaslin, 194 Ky. 460 (239 S. W. 771) ; Movant's Succession, 45 La. Ann.

207 (12 So. 349) ; Hoppe v. Byars, 60 Md. 381; Lane v. Hill, 68
N. H. 275 (73 Am. St. R. 591, 44 Atl. 393) ; Boylan v. Meeker, 15
N. J. Eq. 310; State v. Ready, 78 N. J. L. 601 (28 L. R. A. (N. S.)
240, 75 Atl. 564) ; People v. Storrs, 207 N. Y. 147 (100 N. E. 730,
45 L. R. A. (N. S.) 860, Ann. Cas. 1914C, 196) ; Re Taylor, 10
Abb. Pr. N. S. 300; Kirby v. Kirby, 44 N. C. 454; Re Bailey, 180
N. C. 30 (103 S. E. 896) ; Re Creger, 135 Okla. 77 (274 Pac. 30,
62 A. L. R. 690, and valuable note 698) ; Swope v. Donnelly, 190
Pa. 417 (70 Am. St. R. 637, 42 Atl. 882) ; Lappe v. Gfeller, 211
Pa. 462 (60 Atl. 1049) ; Re Spires, 111 S. C. 373, 97 S. E. 847;
Goethe v. Browning, 146 S. C. 7 (143 S. E. 362) ; Johnson v.
Brown, 51 Tex. 65; Samuel v. Hunter, 122 Va. 636, 95 S. E. 399;
Adams v. Ristine, 138 Va. 273 (31 A. L. R. 1413, 122 S. E. 126) ;
Maxwell v. Ford, 103 W. Va. 124 (136 S. E. 777) ; Johnson's Es-
tate, 170 Wis. 436 (175 N. W. 917) ; Ellis v. Hardy, 1 Moody &
R. 525, 174 Eng. Reprint, 181. It will be noted that the early
cases in California, New Jersey, New York, Ohio, Texas, and West
Virginia, which supported the doctrine that these declarations are
inadmissible, have not been followed in later cases from the Su-
preme Courts of these States. We feel safe in holding that such
declarations, though they may not be admissible, when standing
alone, to prove or disprove the genuineness of a will offered for
probate, on which point we do not express any opinion, are admis-
sible in all cases where the genuineness of the instrument has been
assailed by other proper evidence either to strengthen or weaken the
assault. This is the settled rule in England, and, as we have
shown, is well supported by the authorities of this country.

We think that the conclusion which we have reached is in full
accord with the decisions of this court. In *Patterson* v. *Hickey,*
supra, this court held that revocavit vel non is similar to the ques-
tion of devisavit vel non. In that case, and in *McIntyre* v. *McIn-
tyre,* supra, this court held that where the issue is revocavit vel non,
the declarations of the testator are admissible, though made be-
tween the making of the will and the death of the testator. In
*Patterson* v. *Hickey,* this court adopted the dissenting opinion of
Justices Spencer and Tompkins in the case of Jackson v. Kniffen,
supra. Judge Lumpkin likewise quoted with approval from the
decision in Reel v. Reel, 1 Hawks (N. C.), 248 (9 Am. D. 632),
as follows: "To reject the declarations of the only person having

a vested interest, and who was interested to declare the truth—whose fiat gave existence to the will, and whose fiat could destroy, and in doing the one or the other could interfere with the right of no one, involves almost an absurdity; and (with due deference to the opinions of those who have decided to the contrary) we say —and not upon the ground of their being part of the res gestæ— for whether they accompany the act or not, whether made long before or long after the making of the will, is entirely immaterial as to their competency. Those circumstances only go to their weight or credit with the tribunal who is to try the fact." Again, in *Burge* v. *Hamilton,* 72 *Ga.* 568 (2 c), it was held that the identity of the will with the paper propounded could be "shown by the statements of the testator at the time of the execution, before the execution and afterwards." See also *Mobley* v. *Lyon,* 134 *Ga.* 125 (67 S. E. 668, 137 Am. St. R. 213, 19 Ann. Cas. 1004). From these two cases the conclusion might be drawn that the declarations of a testator may be looked to to ascertain the truth of the facts therein stated; but, as stated above, we do not pass upon this question. We are entirely satisfied, both by reason and the authorities cited, that upon the probate of a will, where the issue is forgery or not, and on which issue conflicting evidence has been introduced, the declarations of the testatrix, made after the alleged execution of the instrument propounded, to the effect that she had never made a will, and that she wanted her property to go to her husband as her sole heir at law, were clearly admissible to corroborate the witnesses testifying to facts tending to show that the will was spurious.

■ In the second special ground of his motion for new trial the propounder asserts that the court erred in giving in charge to the jury section 3846 of the Civil Code of this State, which declares that "All wills . . disposing of realty or personalty must be in writing signed by the party making the same, or by some other person in his presence, and by his express direction, and shall be attested and subscribed in the presence of the testator by three or more competent witnesses," and in immediately thereafter charging the jury: "Consequently, gentlemen, in this case, the burden is upon the propounder to prove the execution of the will offered in accordance with the law and in accordance with the provisions of this section," without going further and instructing the jury in effect, that "after the propounder has shown, if he has in this case,

that the testatrix had testamentary capacity and that the will was freely and voluntarily made, then the onus shifted and it became necessary for the caveator to substantiate. and prove such facts, taken in connection with all the evidence, offered by both sides, as would preponderate in favor of his caveat." Movant insists that the omission so to instruct the jury was erroneous and hurtful to him, because it placed a greater burden upon him than the law fixes in such a case, and had the effect of relieving the caveator of all burden of proof in the matter, especially in view of the evidence of Tom Edge, an eye-witness to the transaction, whose evidence made out a prima facie case in establishing the testamentary capacity of the testatrix in the execution of the will freely and voluntarily. There is no contention by the movant that the instructions given were incorrect statements of law, but that the error consists in not giving to the jury the above omitted instruction. It is not a good assignment of error to allege that an instruction, correct in itself, is error because the court did not go further and give in connection therewith another correct instruction to the jury. *Hattaway* v. *Dickens*, 163 *Ga.* 755 (2) (137 S. E. 57).

■ In the third special ground the movant insists that the court erred in giving in charge to the jury section 5834 of the Civil Code of 1910, which is as follows: "Whenever the subscribing witnesses to an instrument in writing are dead, insane, incompetent, or inaccessible, or, being produced, do not recollect the transaction, then proof of the actual signing by, or of the handwriting of, the alleged maker shall be received as primary evidence of the fact of execution; and if such evidence be not attainable, the court may admit evidence of the subscribing witnesses, or other secondary evidence, to establish such fact of execution," and in immediately thereafter instructing the jury as follows: "Gentlemen, you will readily see that a portion of this section of the code could have no application to the issue or evidence in this case, but I charge you to apply so much of it as you may find applicable to the evidence which has been submitted." The error assigned is that the court should have instructed the jury what portions of this section were applicable, and what were not, and should not have left to the jury the determination of what portions of the charge given were applicable; that the entire section was applicable in this case; and that the instruction had the effect of eliminating movant's contention that the

witness Edge had seen the witnesses sign the same in the presence of the testatrix, at her request, after she had told them that she had signed the same. The judge, after giving to the jury a section of the code, some portions of which he thought were applicable and some other portion of which he thought was inapplicable, should have instructed the jury what portions of the section were applicable and what portion was inapplicable, and should not have left the jury to determine this question for themselves. *Central Ry. Co.* v. *DeLoach,* 18 *Ga. App.* 362 (7) (89 S. E. 433).

■ Movant insists that the court erred in charging the jury as follows: "You may if you see fit, and, as stated, there has been allowed to go to you for that comparison the signatures to certain writings with the signatures to the will, for your determination, if you so see fit, as to whether or not the signatures and mark set forth in the purported will are in truth and in fact the genuine signatures and mark of the testatrix or the subscribing witnesses." Movant insists that this instruction was erroneous for the reasons that (a) it was confusing, and did not correctly state the law governing in such matters; and (b) it instructed the jury that they might or might not consider the evidence referred to in this instruction, and could determine the issue without regard to such testimony and independently thereof. After admitting evidence pertinent to an issue in a cause, it was error for the trial judge to instruct the jury that they could or could not consider such evidence as they saw fit.

As we grant a new trial on account of the errors dealt with in the third and fourth divisions of this opinion, we do not pass upon a complaint that one of the jurors who tried the case was not fair and impartial, or upon the sufficiency of the evidence to support the verdict.

*Judgment reversed. All the Justices concur, except Beck, P. J., who dissents from the ruling in the first division of the decision.*