HOLLOWAY v. PARKER.

4-5287 122 S. W. 2d 563

Opinion delivered December 5, 1938.

*W. P. Beard,* for appellant.

*Joe P. Melton* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

SMITH, J. This appeal presents the question whether the signature of Mrs. Emma M. Thompson to her alleged last will and testament is a forgery. Upon this issue many witnesses gave testimony more or less relevant, and we have before us a vast mass of testimony which cannot be reconciled. Without attempting to review the testimony in this opinion we announce our conclusion to be that there was sufficient testimony to support the finding that the will was genuine; but there is

also sufficient testimony to support the contrary finding made in the verdict signed by eleven of the twelve jurors who tried the case. The chief insistence for the reversal of the judgment pronounced upon the verdict is that it was based, in part at least, upon incompetent testimony admitted over proponent's objections and exceptions, and this, we think, is the only serious question presented for our decision.

Two preliminary questions may be briefly disposed of. The first is that the contestants should have been required to file pleadings setting up the grounds upon which their resistance to the probate of the will was based. The will was probated in common form, and letters testamentary were issued thereon. The heirs-at-law of the deceased prayed in proper form an appeal from the order of the probate court admitting the will to probate. We are cited to no statute requiring other pleadings, although it may have been well enough, and the better practice, to require contestants to state the ground of their contest, and thus define and restrict the issues to be tried.

In the chapter on Wills in 68 C. J., p. 1175, it is pointed out that some states have statutes requiring contests to include a statement of the grounds of contest, but it is there said that "In the absence of positive statutory requirements, where there is an appeal to an intermediate appellate tribunal in which a trial is had on issues of fact, the practice seems to be to require no statement of the reasons of appeal if the appellate court is bound to send the main issue of will or no will directly to the jury."

The opinion in the case of *Hamilton* v. *Hamilton*, 178 Ark. 241, 10 S. W. 2d 377, recites the fact that there were no pleadings filed either in the probate court or in the circuit court on appeal in that case, which was a contest over a will alleged to have been forged. However, it is clear that no prejudice could have resulted from the failure of the court to require pleadings to be filed, for the reason that there had been a former trial of this case resulting in a hung jury, and it is not claimed that any

issues were involved in the second trial which had not been raised in the first one.

The second point is that the court did not withdraw the case from the jury and render a decision. The basis of this contention is that, upon the conclusion of proponent's testimony, the attorney for contestants asked the court to direct the jury to return a verdict finding against the will, and proponent's attorney asked the court to direct a verdict finding for the will. The court declined both requests, and contestants proceeded to put on their testimony.

The practice of withdrawing a case from the jury upon request for a directed verdict was announced in the case of *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339, and was amplified in the case of *Webber* v. *Rodgers,* 128 Ark. 25, 193 S. W. 87, both of which cases have since been frequently cited and followed.

The effect of these cases is that where both parties have offered their testimony, and each requests the court for a directed verdict and requests no other instruction, the trial court may treat the case as having been withdrawn from the jury and submitted to the court sitting as a jury, and the judgment of the court, pronounced under the circumstances, has the same effect as if the jury itself had decided the case. The practice is quite common, as is reflected in numerous opinions of this court, for the defendant, at the conclusion of the plaintiff's testimony, to request the court to render judgment for the defendant; but it has never been held that making this request forestalls the introduction of testimony by the defendant if the request is denied. However, we think that while in cases where both parties have offered all their testimony and each has asked the court for a directed verdict, and neither has asked any other instruction, the trial judge may then withdraw the case from the.jury; but he is not required to do so. It is even then within his discretion to submit the case to the jury, rather than to take the case from the jury and decide it himself.

But the real question in the case, as has been stated, is whether incompetent testimony was admitted which

may have influenced the verdict of the jury. It will appear from a general statement of this testimony that it was prejudicial if it was incompetent. Its general purport was to the effect that Mrs. Thompson and her sisters and their children were not only very fond of each other, but were clannish in their relations to each other, and that Mrs. Thompson had always said that she wished her niece, Mrs. Meric Elcan Fulton, to have her home, and had made a will devising it to her, whereas, under the will offered for probate, this valuable estate was devised to proponent except certain small sums of money. These were $100 to each of her sisters, $50 to each of her nieces and nephews, $25 to each of her grandnieces and grandnephews, $40 per month to a cousin, and $1,000 to the church of which she was a member. These items constitute a very small part of the estate. Mrs. Thompson never had any children.

The question of law presented by this and other similar testimony showing the state of Mrs. Thompson's feelings toward her relatives and toward proponent is whether the testimony was erroneously admitted. Most —but not all—of the testimony as to Mrs. Thompson's declarations showing the state of her feelings toward the parties to this litigation were made prior to the date of the alleged will.

We think this testimony was not incompetent for two reasons. The first is that if it was error to admit the testimony, the error was invited.

In support of the will proponent offered his own and other testimony showing the intimate relation between himself and Mrs. Thompson, in whose home he had lived at one time as a member of her family, and the state of her feeling toward him. For instance, in response to the question asked by proponent's attorney, "Did she (Mrs. Thompson) have any conversation with you after you prepared the will?", the witness, who was an attesting witness, answered: "She made the remark that she wanted Mr. Holloway (proponent) to have the bulk of her estate, because he was the only one who had done anything for her." The necessary implication of this and other testimony to the same effect is that Mrs.

Thompson felt kindly to proponent and unkindly to her relatives. Having put this relationship and state of feeling in issue, proponent had no right to object to testimony offered in its refutation. We have many cases to the effect that a party may not complain because the court admitted incompetent evidence on behalf of the other party if he was the first to introduce evidence of a similar character. In such cases the error is said to have been invited, and not prejudicial for that reason.

While the admission of this testimony might be held not to be prejudicial for the reason stated, we prefer not to place our decision upon this ground alone. Our cases are not harmonious on the subject, and we take this occasion to announce the rule to be hereafter followed. This much may be said in extenuation of the discord in our cases. This court, like a number of others, first followed the rule announced by the Supreme Court of the United States in the case of *Throckmorton* v. *Holt,* 180 U. S. 552, 21 S. Ct. 474, 45 L. Ed. 663, and this court, as well as a number of others, as will presently be made to appear, has attempted to ameliorate the rule announced in the case last cited and avert the injustice which its application had previously encompassed without disapproving that case.

Of this Throckmorton Case, it may first be said that the opinion was rendered by a badly divided court, as three of the justices dissented upon the point under discussion, while a fourth justice concurred only in the result, so that the opinion was made by the barest possible majority of the court.

In the case of *Leslie* v. *McMurtry,* 60 Ark. 301, 30 S. W. 33, the trial court excluded testimony to prove the declarations of the testator made about a year after the date of the instrument claimed to be a will, to the effect that he had made no will. The reason given for affirming the action of the trial court in excluding this testimony was that "He (the testator) may, to secure his own peace and comfort during life, to relieve himself from unpleasant importunities of expectant heirs, conceal the nature of his testamentary dispositions, and make state-

ments calculated and intended to deceive those with whom he is conversing.'' This reason does not apply here, because no testimony was offered that Mrs. Thompson had stated that she would die intestate.

This case was cited and approved in the case of *Flowers* v. *Flowers*, 74 Ark. 212, 85 S. W. 242, where it was said: ''That decision seems in line with the decided weight of authority, as shown by the collation of authorities in the note to the recent case of *Throckmorton* v. *Holt,* 180 U. S. 552, 571, 21 S. Ct. 474, 45 L. Ed. 663.''

In the later case of *Connor* v. *Bowers,* 184 Ark. 102, 41 S. W. 2d 977, it was said: ''The general rule announced by this court in the cases of *Leslie* v. *McMurtry,* 60 Ark. 301, 30 S. W. 33, and *Flowers* v. *Flowers,* 74 Ark. 212, 85 S. W. 242, is that declarations of a decedent either before or after the execution of a will, unless a part of the *res gestae,* are inadmissible where the issue is one of forgery.''

If we had no other cases on the subject, these would indicate that we were definitely committed to the proposition that the declarations of an alleged testator, unless a part of the *res gestae,* were inadmissible where a will was being contested upon the ground that it was forged. But we have other cases, and their holding is to the contrary. However, before reviewing them, it may be said, as a practical matter, that the admission only of statements, which are a part of the *res gestae,* in the execution of a will, operates to render admissible the evidence of the parties who may have participated in its forgery, and of excluding other testimony, which would make it highly probable, if not entirely certain, that the will had been forged. This rule permits the forgers to testify, and excludes the testimony of others, as it is highly improbable that anyone except the conspirators would be present when the will was forged.

The case of *Longer* v. *Beakley,* 106 Ark. 213, 153 S. W. 811, is one of these cases announcing the contrary rule. If there were any doubt as to what this opinion holds— and we think there is none—the dissenting opinion of the late Chief Justice McCULLOCH, of honored and rev-

ered memory, removes the doubt. In his dissenting opinion, Judge McCulloch, who had written the Flowers Case, *supra*, cites the Leslie Case, *supra,* in support of his dissenting view, but his opinion was a dissenting opinion, and not the opinion of the court. It is said this Longer Case was not a will contest, and, as a matter of fact, involved the question whether an assignment of an insurance policy had been forged. But both the majority and the dissenting opinions recognized that the rule relating to the admission of testimony in will cases was applicable to and governed in that case. It was said in the majority opinion that ''For all practical purposes the execution of this request for change of beneficiary was Frankring's will, because it disposed of practically all he owned,'' and upon the issue whether the change of beneficiary was a forgery, we held competent evidence showing the mental attitude of the insured to his relatives who would have been the beneficiaries in the insurance policy if no change had been made, and also his attitude towards the substituted beneficiary.

In the case of *Hamilton* v. *Hamilton,* above referred to, in a contest over the probate of a will alleged to have been forged, the court refused to give an instruction numbered 5 to the effect that the intention of the alleged testatrix in regard to the distribution which she wished made of her estate was entitled to no consideration in determining whether or not the purported will was properly executed. In holding that it was not error to refuse this instruction, it was there said: ''We think a will executed in accordance with the declared intention of a testator would be a very strong circumstance tending to show the genuineness of a will assailed on the ground that the signatures thereto were forgeries. We cannot think of a stronger circumstance tending to establish the genuineness of a will under such circumstances. The case of *Johnson* v. *Hinton,* 130 Ark. 394, 197 S. W. 706, cited by appellants in support of their contention on this point, is not applicable. In that case the issue was whether the will had been properly executed in accordance with the statutory requirements. Of course, the intention of

a testator under such circumstances could have no effect. The testator, in order to give validity to his will, must execute his will in accordance with statutory requirements, irrespective of what his declared intention might or might not have been. The court did not err in refusing to give appellants' requested instruction No. 5.''

We shall not attempt to reconcile these cases, as that task would be impossible to perform. We shall content ourselves with the announcement of the correct rule to follow. The conclusion we shall announce has been reached after the fullest consideration of many cases on this subject, but we shall attempt no review of them, as their number is almost without limit. If one wishes to review the cases on the subject, many of them may be found cited in the cases of *Rea* v. *Pursley,* 170 Ga. 788, 154 S. E. 325; In re *Morrison's Estate,* 198 Cal. 1, 242 Pac. 939; *State* v. *Ready,* 78 N. J. L. 599, 75 Atl. 564, 28 L. R. A., N. S., 240, and *In re Estate of M. Creger,* 135 Okla. 77, 274 Pac. 30, 62 A. L. R. 690, and especially those in the note to the last-cited case. See, also, chapter on Wills, 68 C. J., p. 1004, and cases there cited.

In the body of the opinion in the case of *In re Creger's Estate, supra,* it was said: ''Perhaps a majority of the earlier cases are in harmony with the Throckmorton Case. Perhaps, on account of the prestige of the Supreme Court of the United States, the case of *Throckmorton* v. *Holt* doubtless overshadowed for a time the decisions of the state courts, which took the oposite view. Recently, however, the case has not been followed to any great extent, and we believe now that it is against the great numerical weight of the authorities, as well as it is against reason and the natural rule of relevancy.'' A vast number of cases are there cited in support of the statement quoted.

In the case of *Rea* v. *Pursley, supra,* it was said: ''Probably the majority of the earlier cases are in harmony with *Throckmorton* v. *Holt, supra,* but it has been suggested that this is due to the fact of the prestige of the Supreme Court of the United States, which rendered the decision in that case. In the later cases the correct-

ness of the rule laid down in that case has been questioned and repudiated. Now the weight and trend of the authorities are in favor of the admissibility of declarations of an alleged testator, both those made before and those made after the date of the purported will, on the issue of forgery of the will, where the issue is raised by other substantial evidence, and proof of the declarations is corroborative of other testimony.''

In this opinion the Supreme Court of Georgia, after citing a great many cases, proceeded to say: ''It will be noted that the early cases in California, New Jersey, New York, Ohio, Texas, and West Virginia, which supported the doctrine that these declarations are inadmissible, have not been followed in later cases from the Supreme Courts of these states. We feel safe in holding that such declarations, though they may not be admissible, when standing alone, to prove or disprove the genuineness of a will offered for probate, on which point we do not express any opinion, are admissible in all cases where the genuineness of the instrument has been assailed by other proper evidence either to strengthen or weaken the assault. This is the settled rule in England, and, as we have shown, is well supported by the authorities in this country.''

The case of In re *Morrison's Estate, supra,* was a California case. California was one of the states which for a long period of time adhered to the doctrine of the Throckmorton Case, but later, in a series of well-considered opinions, at last committed itself definitely to the opposite view. In this Morrison Case the Supreme Court of California, in commenting upon restrictive rules of evidence which limited the inquiry as to the proof of the handwriting of an alleged testator and that of the subscribing witnesses in the inquiry as to whether the will was genuine or had been forged, had this to say: ''But in this state of case was no other evidence admissible? Were the jury bound to decide the issue and make up their verdict upon such testimony alone, and do the rules of evidence inexorably exclude from their consideration every other fact or circumstance that would tend to throw light upon the subject, so as to render it prob-

able or improbable that such a paper was ever written by the deceased, or in corroboration of the direct testimony as to handwriting given on either side? We think not. It must be admitted that testimony as to handwriting, in any case of alleged forgery, though the best the nature of the case admits of, is usually the most unsatisfactory species of evidence courts of justice have to deal with."

In holding that the inquiry should not be thus restricted the court had this further to say: "It seems to us. that in such a case every collateral fact and circumstance which is not clearly immaterial and irrelevant ought to be admitted, to aid the jury in reaching the truth, which after all is the object of every jury trial."

After quoting extensively from the case of *Hoppe* v. *Byers,* 60 Md. 381, the Supreme Court of California, in this Morrison Case, proceeded to say: "The foregoing decision and the reasons which are given to support it has been cited with approval by a number of other states in decisions made since its rendition, and the doctrine therein declared, with notes embracing these decisions, has been embodied in the text of the following authors in the editions of their works on evidence issued or revised since the decision of the Maryland Case: See 1 Greenleaf on Evidence, (16th Ed.) pp. 57, 81, 261; 4 Chamberlayne on Evidence, § 2649; Chase's Stephens Digest of Law of Evidence, (2d Ed.) p. 100; 1 Elliott on Evidence, § 533; 1 Wigmore on Evidence, (2d Ed.) § 112, 3 Id. §§ 1735, 1736. In the author's note to Wigmore on Evidence, § 112, *supra,* the case of *Hoppe* v. *Byers, supra,* and the later decisions of other states adopting its doctrine are cited at length, and the case of *Throckmorton* v. *Holt, supra,* which indicates a different rule, is criticized as against the weight of authority and as a 'lonesome decision.' "

The note to the Creger Case, *supra,* annotates extensively the question of "admissibility of testator's declarations upon the issue of the genuineness or due execution of purported will." The annotator says: "The apparent weight and trend of authority, notwithstanding the contrary result was reached in a decision in the Fed-

eral Supreme Court (Throckmorton Case), is in favor of the admissibility of declarations of the alleged testator (both those made before and those made after the date of the purported will), on the issue of forgery of the will, where the issue is raised by other substantial evidence, and proof of the declarations is therefore corroborative of other testimony." Numerous cases from eighteen different states are cited to support this declaration of the law.

The annotator sums up his exhaustive review of the authorities with a statement which appears to us to be the proper rule, and which we now adopt, as follows: "It seems that if an instrument purporting to be a will is produced, and a *prima facie* case is made out of its due execution and genuineness by testimony of the subscribing witnesses, proof of their handwriting, or otherwise, those contesting the will should not be allowed to overthrow it merely by proving declarations of the testator inconsistent with the purported will, and, therefore, unless they offer some other proof that the instrument is not genuine, but is a forgery, or was not duly executed, it will be proper to exclude evidence of the testator's declarations. Probably some of the decisions excluding the declarations can be explained on this ground, even though not expressly so stated. They may have been offered without sufficient corroborative evidence." In the instant case testimony was offered as to numerous facts and circumstances tending to show that the will was not genuine, and we conclude, therefore, that the testimony as to the declarations of Mrs. Thompson were properly admitted.

Upon the question as to "Time of declarations with respect to date of will as affecting question; *res gestae*," the annotator, in the note to the Creger Case, *supra,* at page 710, makes this very pertinent and practical observation: "It is evident, however, that if the courts were to permit the date of the will to determine the admissibility or inadmissibility of such declarations on the issue of forgery, they would be assuming the very point in issue, viz., the genuineness of the will; otherwise

they would be giving importance to a purely fictitious date inserted by the forger.''

This statement is so convincing that we cannot with-hold our approval from it.

Upon the whole case we are of the opinion that the testimony complained of was admissible, and as the testimony fully supports the verdict and the judgment pronounced thereon it must be affirmed, and it is so ordered.